No. 56,276

NORTHEAST KANSAS PRODUCTION CREDIT ASSOCIATION, *Plaintiff/Appellee*, v. W.J. FERBRACHE, GRACE FERBRACHE, and JAMES L. FERBRACHE, *Defendants/Appellees*, and DAN V. GROTH, D.V.M., ANIMAL HEALTH CENTER, P.A., *Lien Claimant/Appellant*.

(693 P.2d 1152)

Opinion filed January 26, 1985.

*Ron Gooding*, of Gooding Law Office, Chartered, of Topeka, argued the cause and was on the briefs for the lien claimant/appellant.

*Marlin A. White*, of Holton, argued the cause, and *Dennis A. White*, of Holton, was with him on the brief for the appellee Northeast Kansas Production Credit Association.

The opinion of the court was delivered by

PRAGER, J.: This case involves a dispute between two lien claimants over the priority of their lien interests in the proceeds from the sale of 85 cattle belonging to the debtors, W.J. Ferbrache, Grace Ferbrache, and James L. Ferbrache. Northeast Kansas Production Credit Association (PCA) is the owner of a security interest in the cattle which was perfected in January of 1981. Dan V. Groth, D.V.M., claims a veterinarian lien on the 85 cattle pursuant to K.S.A. 47-836.

The facts in the case are not disputed and are as follows: On or about January 30, 1981, the Ferbraches, farmers and cattlemen, executed two security agreements with Northeast Kansas Production Credit Association (PCA) pledging as collateral, among other items, all livestock now owned or hereafter acquired by way of replacement, substitution, increase, or addition. The

Ferbraches also executed a financing statement covering the same property which was filed with the Brown County Register of Deeds, thereby perfecting the security interest of PCA. On or about February 5, 1981, the Ferbraches executed a promissory note to PCA in the amount of $283,894.23 which was due on February 1, 1982. The Ferbraches failed to pay the indebtedness due on the note and, in November of 1982, PCA filed an action for foreclosure of the security agreement.

From January 1977 to July 1983, Dr. Groth performed veterinary services on 2,000 to 3,000 head of Ferbrache cattle. The Ferbraches failed to keep their account current, and, as a result, by August of 1983, the unpaid bill for services performed on the cattle for the six-year period totaled $21,334.15. On August 18, 1983, Dr. Groth executed and filed a lien statement for his services with the Register of Deeds. On the same day, the Ferbraches voluntarily delivered 85 head of cattle to Groth to prepare them for sale. At the time, Groth claimed a veterinarian lien on the 85 cattle pursuant to K.S.A. 47-836. The 85 head of cattle were later sold by agreement of all parties in PCA's foreclosure action. The proceeds from the sale of the 85 cattle, in the amount of $24,356.79, was paid into court. This dispute is over who is entitled to the proceeds of the sale. PCA claimed that it was entitled to the proceeds in order to satisfy its security agreement. Dr. Groth claimed that he had a prior veterinarian lien on the proceeds which should be applied to satisfy his total claim of $21,334.15. The parties agreed that Dr. Groth had a prior veterinarian lien on the 85 head of cattle at least for his services in preparing them for sale, since he had possession of the cattle when they were sold by agreement of the parties. They disagreed as to the amount of his lien.

The case was tried by the Brown County District Court which awarded Dr. Groth $1,027.70 for presale expenses and veterinary services to the 85 head of cattle incurred during the last period he had possession of the cattle from August 18, 1983, until they were sold on September 17, 1983. The remainder of the proceeds of the sale of the cattle was awarded by the trial court to PCA in partial satisfaction of its security agreement. Dr. Groth then appealed.

Dr. Groth claims that he is entitled to $21,334.15 for his veterinary services rendered to the 2,000 to 3,000 head of cattle

of the Ferbraches from 1977 to 1983. Dr. Groth bases his claim on K.S.A. 47-836 which provides for a lien for veterinary services in the following language:

"47-836. **Lien for veterinary services; preference.** A veterinarian, or a veterinary partnership offering veterinary service to animals in the field or otherwise, who shall, at the request of the owner or lawful possessor of any animal, bestow any professional attention, care, vaccines, antisera, virus, antibiotics, or other medical treatment, food or service upon the same shall have a lien upon such animal for the just and reasonable charges therefor, and may hold and retain possession of such animal until such charges are paid. The lien hereby created shall have preference over any and all other liens or encumbrances upon such animal or animals, regardless of where such veterinary service has been rendered."

In this case, the court is required to interpret K.S.A. 47-836 and to apply it to the facts now before us. At the outset, it would be helpful to review some of the basic legal principles which are applicable to liens on personal property. Certain liens on personal property for services rendered in repairing or improving the same were recognized at common law. All of these liens were *possessory* liens which required the lien claimant to retain possession of the property and then to enforce his lien by proceeding with a civil action. If the lien claimant voluntarily delivered possession of the personal property to the owner, the lien was deemed to be extinguished. Later, various state legislatures, including the Kansas legislature, enacted statutes which provided for statutory liens on personal property. Many of these statutes expanded the scope of the common-law liens by providing for perfection of a lien by some form of statutory notice.

In 1868, the Kansas legislature first enacted statutes providing for certain liens on personal property. Statutory liens on personal property may be found today at K.S.A. 58-201 *et seq.* That chapter provides for various liens including liens for material and services furnished (K.S.A. 58-201); liens for threshing or harvesting grain (K.S.A. 58-203); liens for feed and care of livestock (K.S.A. 58-207); liens for a forwarding merchant, warehouse keeper, carrier or other bailee (K.S.A. 58-208); liens for seeding and baling broomcorn and baling hay (K.S.A. 58-218); an agister's lien (K.S.A. 58-220); liens for work, labor or materials supplied by cleaning establishments (K.S.A. 58-222); and liens on mobile homes (K.S.A. 58-227).

Prior to the enactment of K.S.A. 47-836 in 1969, a veterinarian

had no separate lien provided for by statute, and any claim of lien by a veterinarian had to be asserted under one of the statutory liens. We also should note K.S.A. 58-215, which provides as follows:

"The voluntary delivery to the owner or claimant of any personal property by any person claiming a lien thereon, as provided in this act, shall be held to be an abandonment of such lien, and such lien may also be waived by special contract."

Since the beginning of statehood, the policy of the Kansas law has been opposed to secret liens on personal property. That public policy is expressed in *Loader v. Bank*, 113 Kan. 718, 216 Pac. 264 (1923). *Loader* involved an action to enforce an agister's lien on livestock covered by a chattel mortgage. In the opinion, the court noted that the essence of the common-law lien was possession, and relinquishment of possession relinquished the lien. The court stated, "The policy of the law is against secret liens, and the court knows of no noncontract lien on personal property, good as against purchasers or mortgagees, not dependent either on possession or on some form of statutory notice." p. 720.

Later, in *Hoy v. Griffin*, 137 Kan. 872, 875, 22 P.2d 449 (1933), the court held that an agister's lien is waived if the owner assumed possession or control of the animals. In a more recent case, *Chasteen v. Childers*, 218 Kan. 519, 546 P.2d 935 (1976), it was held that any lien claimed for the feed and care of horses was abandoned by the lien claimant's voluntary surrender of the horses to the owner. The court applied K.S.A. 58-215.

We also note the provisions of the Uniform Commercial Code in regard to the priority of liens claimed on personal property. K.S.A. 84-9-310 provides as follows:

"84-9-310. **Priority of certain liens arising by operation of law.** When a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a security interest, a lien upon goods in the possession of such person given by statute or rule of law for such materials or services takes priority over a perfected security interest unless the lien is statutory and the statute expressly provides otherwise."

In both the Official UCC Comment and the Kansas Comment to that section, it is stated that the primary requirement is that the statutory lienor be in possession of the goods.

With these legal principles in mind, we turn to a consideration of K.S.A. 47-836 which provides for a lien for veterinary services.

It is important to note that that statute, which is quoted in full above, makes no provision whatsoever for the filing of a statutory notice. In view of the public policy of the Kansas law against secret liens, we have no hesitancy in holding that the lien provided for by K.S.A. 47-836 is a possessory lien and, in order to enforce the lien, a veterinarian must retain possession of the animal until the charges are paid. If the legislature had desired to provide for a statutory notice of lien following delivery of possession to the owner, it could have done so, but it did not. We are obligated to enforce K.S.A. 47-836 as written. We hold that delivery of possession to the owner of an animal serviced by a veterinarian results in a loss of the lien.

The district court, in entering judgment awarding Dr. Groth $1,027.07 for services rendered during the last period of possession from August 18, 1983, to September 17, 1983, and the remainder of the proceeds of the sale to PCA, reasoned as follows:

"The Court is of the opinion that regardless of how a veterinary lien is to be perfected a veterinary performing services upon a certain head of livestock has a lien only upon that particular animal for the just and reasonable charges therefor, and that such veterinary does not have a statutory lien upon certain livestock for services to other livestock which have been disposed of. The Court is of the opinion that the legislature intended that a veterinary is entitled to a lien upon an identifiable animal upon which he rendered services to the extent of the reasonable charge for the services rendered to that specific animal and none others."

In our judgment, that issue was correctly decided by the trial court. K.S.A. 47-836 provides, in substance, that a veterinarian who shall at the request of the owner of *any animal* bestow any professional service upon the *same* shall have a lien upon *such* animal for the just and reasonable charges therefor, and may hold and retain possession of *such* animal until such charges are paid. In view of this language, it is clear to us that Dr. Groth's veterinarian lien covered only his services provided the 85 head of cattle actually in the possession of Dr. Groth as lien claimant. The statutory language precludes any claim of a veterinarian lien for services provided to the other 2,000 to 3,000 head of cattle which have been disposed of by the Ferbraches. Dr. Groth was entitled to a possessory veterinarian lien only on the 85 head of cattle in the amount of $1,027.07 for the veterinary services performed by him on those particular cattle during the period

from August 18, 1983, until they were sold on September 17, 1983.

The judgment of the district court is affirmed.