**In re DELTA ENERGY RESOURCES, INC., Debtor.**

**William C. SANDOZ, Trustee, Plaintiff,**

**v.**

**CONOCO, INC. and Louisiana Gas System, Inc., Defendants.**

**CONOCO, INC. and Louisiana Gas System, Inc., Plaintiff,**

**v.**

**William C. SANDOZ, Trustee and Damson Oil Co., et. al., Defendants.**

**Bankruptcy No. 483–01281–LC–11. Adv. Nos. 484–0007, 484–00011.**

United States Bankruptcy Court, W.D. Louisiana.

April 24, 1986.

## REASONS FOR JUDGMENT

RODNEY BERNARD, Jr., Bankruptcy Judge.

This matter is before the court on motion of Louisiana Gas System [LGS] for summary judgment. The above-referenced adversary proceedings have their genesis in a series of financial dealings between the debtor, Delta Energy Resources, Inc. [Delta], LGS, and Damson Oil Company [Damson]. LGS purchased gas produced by wells operated by Delta. Delta's petition in bankruptcy was filed on December 22, 1983, and a trustee was appointed. Shortly thereafter, the trustee made demand upon LGS for payment of the December runs attributable to purchases made from the aforementioned wells. A conflicting claim to those funds was asserted by Damson, and in addition, LGS claimed a right to set off. The trustee filed a suit seeking turnover of those funds, LGS filed suit seeking recognition of its right to set-off, and Damson intervened in both suits. The cases have been consolidated for purposes of this motion, by which LGS seeks summary judgment in its favor, recognizing its right to set-off. LGS's motion addresses only two of its three claims against the debtor, and does not address Damson's rights, if any. Thus, this motion will be treated as one for partial summary judgment under Rules 56(a), (b) and (d) of the Federal Rules of Civil Procedure, applicable by reference through Bankruptcy Rule 7056. *Gotkin v. Miller,* 379 F.Supp. 859 (E.D.N.Y.1974); *Krimlofski v. United States,* 190 F.Supp. 734 (D.Iowa 1961).

The purpose of a motion for summary judgment is to "determine whether the parties have a real basis for relief or defense". *Gossett v. Du-Ra-Kel Corp.,* 569 F.2d 869 (5th Cir.1978). The court does not try issues of fact or weigh evidence, but only determines whether there are issues of fact for trial. *Staren v. American National Bank and Trust Co.,* 529 F.2d 1257 (7th Cir.1976); *EEOC v. May & Co.,* 572 F.Supp. 536 (N.D.Ga.1983). For reasons of expeditious disposition of matters where facts are not in dispute, Rules 56(a), (b) and (d) allow the court to grant summary judgment on particular issues, or partial summary judgment, in order to narrow the scope of trial. *Chi-Mil v. W.T. Grant Co.,* 70 F.R.D. 352 (D.C.Wis.1976), *amended* 422 F.Supp. 46.

In ruling on a motion for summary judgment, the court must determine whether the parties have met their respective burdens of proof in showing that there are or are not factual issues for trial. The mover clearly bears the initial burden of making a convincing showing that no material factual controversy exists. Once the mover makes that threshold showing, the parties opposing the motion must produce proper evidence showing that a real dispute exists. *McCormick v. Ross,* 506 F.2d 1205 (8th Cir.1974) The defending party must do more than make a bare denial. *Golden Oil Co. v. Exxon,* 543 F.2d 548 (5th Cir.1976); *Lesnefsky v. Fischer & Porter Co.,* 527 F.Supp. 951 (E.D.Pa.1981); *In re Wright,* 19 B.R. 271 (Bankr.D.Mass.1982).

It may also be helpful at this point to say a word about factual versus legal issues. Although sometimes not easy to distinguish, factual questions deal with whether something did or did not happen, or when or where that event took place. Legal issues are the conclusions to be drawn from those facts. Thus, a legal issue will always be dependent on certain factual events. That factual dependence, however, does not convert a legal issue into a factual one.

### Statement of the Case

LGS first claims a right to set-off based on alleged claims of overcharges made by the debtor for gas produced from the Carl Hoppe # 2 Well. That claim is based on Delta's collection of Natural Gas Policy Act § 102 prices. These collections were made, pursuant to a Federal Energy Regulatory Commission [FERC] regulation allowing such collection pending approval of Delta's application to charge section 102 prices. The debtor never obtained such authority and LGS claims the right to set off the

amounts of such overcharges, plus interest. Interest on such overcharges is provided for by 18 CFR 273.203(e), and is to be computed in accordance with 18 CFR 154.-102(c), which provides for interest compounded quarterly, which is based on a quarterly average of the prime rate established by the Federal Reserve. LGS has submitted affidavits accompanied by detailed breakdowns of those figures. LGS claims that as of the petition date, Delta was obligated to LGS in the amount of $38,390.34 in principal and $11,959.31 in interest for a total of $50,349.65 as a result of overpayments made from gas purchases from the Carl Hoppe # 2 well.

LGS also claims a right to set off as a result of the judicial invalidation of Federal Energy Regulatory Commission Rule 93. Rule 93, which authorized the computation of British Thermal Units by means of "dry" measurement as opposed to "wet" measurement, was declared unconstitutional in *INGAA v. FERC,* 716 F.2d 1 (D.C.Cir. 1983). Rule 93 had resulted in increased prices paid to gas producers. Thus, the Federal Energy Regulatory Commission [FERC] mandated that, pursuant to 18 CFR 270.101(e), all prices charged in excess of the maximum lawful price be refunded. This regulation was made retroactive and applies to all overcharges resulting from Rule 93. LGS asserts, by way of affidavits, that it overpaid Delta by $81,640.70 from January 1981 through December 1983, and claims a right of set off in that amount, plus interest under 18 CFR 270.-101(e), computed in pursuant to 18 CFR 154.102(c), of $15,086.93.

LGS claims a total due it of $147,077.28. The total of the December runs owed to Delta is $148,660.81. Since Delta filed its petition in bankruptcy on December 22, LGS claims that it has the right to set off only 21/31st of the amount of the December runs, or $100,705.71.

### Findings and Conclusions

The trustee has raised several issues in opposing this motion for summary judg-ment. Each of these shall be dealt with in turn.

#### I.

■ The trustee first asserts that LGS has failed to show that there is a statutory basis for set off in this case. The Bankruptcy Code provides for the exercise of a right of set off in certain situations, and gives the creditor, who has a right to set off, secured status but it does not create the right to set off. The right must exist independently under applicable state or federal law. The trustee argues that no such right exists in this case. LGS responds by citing the Civil Code concept of compensation, found in La.Civ.Code Art. 1893, and the concept of judicial compensation as codified in La.Civ.Code Art. 1902. The civil law concept of compensation is identical to the common law concept of set off: when two entities owe each other an obligation, that obligation is extinguished to the extent of the lesser amount. *Pierce v. Millar,* 3 Mart.N.S. 354 (La.1825). First, it should be pointed out that this is not a factual issue, but purely a legal one, and is therefore amenable to decision in the context of this motion. Second, it is clear that a right to compensation, whether denominated legal or judicial, exists in this case.

#### II.

■ The trustee next argues that LGS has failed to allege or prove when its right to set-off arose, i.e., whether the alleged right was pre-or post-petition, making it impossible to perform the "improvement of position" test of section 553. The trustee asserts that a factual determination of LGS's position relative to its right of set-off on each of the 90 days preceeding the petition date must be made in order to "prove an essential element of its cause of action pursuant to 11 U.S.C. § 553(b)". LGS's cause of action, however, and/or defense, is in no way based on section 553 of the Bankruptcy Code (11 U.S.C. §§ 101 *et seq.*). The trustee apparently misunderstands the operation of section 553 and section 506. Section 506(a) states that a

creditor has a secured claim to the extent of any right of set-off under section 553. In other words, "an amount subject to set-off is sufficient to recognize a secured status in the holder of such rights." House Report 95–595 (95th Cong.1978), U.S.Code Cong. & Admin.News 1978, p. 5787. Section 553(a) provides that, with limited exceptions which are not pertinent here, a right to set-off is unaffected by bankruptcy. "By equating set-off with secured claims, the Code recognizes that a permitted set-off is, in effect, an allowed preference." *In re Santoro Excavating, Inc.*, 32 B.R. 947, 950. (Bankr.S.D.N.Y.1983). Section 553(b), which allows the trustee to recover the amount by which the set-off improved the creditor's position in the 90 days before bankruptcy, by its own terms applies *only* if a creditor exercises his right of set-off in the 90 days preceeding bankruptcy. Such is not the case here. In *Exxon Corporation v. Compton Corporation (In re Compton Corporation)*, 9 B.C.D. 429, 22 B.R. 276, 6 C.B.C.2d 1326 (Bankr.N.D.Tex.1982), the debtor-in-possession also argued that § 553(b) should apply to a post-petition set-off. The court in *Compton* found that section 553(b) applied only to pre-petition set-offs, stating that a creditor does not lose its right to set-off by failing to exercise that right prior to the petition date. Because a post-petition set-off requires court approval, the court reasoned, "the need for a system of 'checks and balances' like that found in section 553(b) is simply not present." Id. at 428, 22 B.R. 278, 6 C.B.C.2d 1328. Since section 553(b) is not pertinent in this context, the trustee has failed to raise a material issue of fact which will preclude summary judgment in this case.

### III.

■ The third ground upon which the trustee defends this motion has to do with the affidavits which are a part of the record in this proceeding. Referring to those sworn affidavits and the financial information attached thereto, the trustee states that "such documentary evidence was never stipulated to and when facts are based on such evidence the trustee is entitled to the right to cross-examine this witness. Thus, these facts are still in dispute." This court disagrees with that assessment of the validity and weight to be given such evidence here. In the context of a motion for summary judgment, *ex parte* affidavits are the accepted method of showing that no material facts exist for trial. *Board of Public Instruction v. Meredith*, 119 F.2d 712 (5th Cir.1941), *cert. den.* 314 U.S. 656, 62 S.Ct. 109, 86 L.Ed. 526. If the moving party meets its initial burden of proof, for example, by submitting affidavits showing the amounts of overcharges, as was done here, the opposing party, in order to avoid conceeding those facts for the purposes of summary judgment, must come forward with either affidavits showing a different set of facts, or an affidavit under Rule 56(f) showing why it is impractical to do so. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). On a motion for summary judgment, the need of making a showing of some sort of opposing evidence is as great as upon trial. *Hemler v. Union Producing Co.*, 40 F.Supp. 824 (W.D. of La.1941) aff'd in part and rev'd in part on other grounds 134 F.2d 436 (5th Cir.1943). As stated by the court in *Southern Rambler Sales, Inc. v. American Motors Corp.*, 375 F.2d 932 (5th Cir.1967) *cert. den.* 389 U.S. 832, 88 S.Ct. 105, 19 L.Ed.2d 92, Rule 56 affirmatively requires the use of discovery tools and affidavits to oppose a summary judgment motion, "on pain of judicial denouement, saying in effect 'meet these affidavit facts or judicially die....'" *Id.* Therefore, opposition to such a motion must be diligent. Mere general allegations which do not contain detailed and specific facts will not prevent an award of summary judgment. *Croley v. Matson Navigation Co.*, 434 F.2d 73 (5th Cir.1970), *adhered to* 439 F.2d 788 (1971); *Liberty Leasing Co. v. Hillsum Sales Corp.*, 380 F.2d 1013 (5th Cir.1967).

■ In this case, the trustee has provided no evidence controverting that presented by LGS, but merely asserts his right to

cross-examine. Neither has the trustee offered any reason why such evidence might be unavailable to him. The moving party having established substantial facts entitling it to judgment, the trustee has failed to meet his burden of showing that material facts exist for trial. Further, this court has examined the affidavits submitted and the attachments thereto, and finds them competent and clear. The affiant has also adjusted his figures to reflect pre- and post-petition overcharges, claiming only 21/31st of the amounts due for the month in which the petition was filed. No evidence to the contrary being presented, this court must accept the accuracy of those affidavits for the purposes of this motion.

The trustee also objects to the use of the 21/31st formula to determine amounts of funds attributable to gas production during the month of December 1983, the month in which the bankruptcy petition was filed. The trustee points out that that formula assumes equal production during each day of the month. The trustee, however, presents no evidence to the contrary, nor does he show that such evidence was unavailable to him pursuant to Rule 56(f). It seems to this court that the trustee, as the representative of the debtor, would be in the best position to know the actual rates of production. Further, the trustee has made no showing that such evidence is available at all. As pointed out above, a mere allegation or denial is insufficient to establish the existence of a material fact for trial.

## IV.

The trustee also opposes this motion on the grounds that it is not too late to have the Carl Hoppe No. 2 well reclassified in order to be allowed to charge the higher price. The trustee points out that the Carl Hoppe No. 1 well was so classified after it stopped producing, and "[a]s far as is known at the present time the Hoppe No. 2 well has not been plugged and abandoned." This court finds such speculation to be insufficient to defeat this motion for summary judgment. The trustee does not state his intention to seek such reclassification, only that it could happen. LGS should not have to wait indefinitely for a determination of its rights, especially when it is far from clear that such reclassification could ever be obtained. Authority has not been obtained by the debtor or the trustee to charge section 102 prices, and there is no evidence before this court that such authority can be obtained or even that it will be sought. In addition, 18 C.F.R. §§ 273.301 and 273.302 impose an affirmative duty on the debtor to refund any such overcharges. This court thus finds no material issue of fact for trial.

## V.

■ The final ground raised by the trustee is that the debt owed to LGS resulting from the invalidation of F.E.R.C. Rule 93 is not subject to set-off because it is a post-petition debt. In this regard the trustee argues that although the district court decision declaring the rule invalid was handed down in 1983, the decision by the commission to impose the lower price and make the rule retroactive was not handed down until 1984, after the petition in this case was filed.

First, the court notes that this is not a factual issue, but a legal one. It requires the court to determine the legal effect of a series of events, but the happening of these events is not in dispute. The court will, therefore, treat this issue as if cross-motions for summary judgment had been filed.

The court notes that all the transactions which gave rise to this debt occurred prior to the petition date. The genesis of the debt is clearly pre-petition and although the refund order was entered later, LGS was overcharged before the petition was filed.

This very issue was recently decided in *In re Marian Corporation,* Case No. 83–00373, Adv. No. 85–0100, November 1, 1985 (Bankr.S.D.Ala.). In an unpublished opinion, Judge Kahn held that claims arising from the retroactive invalidation of Rule 93 were pre-petition, because the debt was based entirely on pre-petition factors. *See also In re Cott,* 47 B.R. 487

(Bankr.D.Conn.1984); *In re Kessler,* 23 B.R. 722 (Bankr.S.D.N.Y.1982). This court agrees with the court in *Marian Corporation,* and finds this debt to be a pre-petition debt, and therefore subject to LGS's right to set-off.

### Conclusion

This court finds no material issue of fact for trial in the matters presented for decision on this motion. The mover, LGS, is entitled to summary judgment declaring its right to set-off $100,705.71. That amount represents $38,390.34 in principle as a result of the debtor's overcharges on gas produced by the Carl Hoppe No. 2 well, and $11,959.31 in interest provided for by 18 C.F.R. 273.302(e) and computed in accordance with 18 C.F.R. 154.102(c); and $81,-640.70 in principle resulting from the invalidation of Rule 93, combined with interest of $15,086.93 computed pursuant to 18 C.F.R. 154.102(c), as provided by 18 C.F.R. 270.101(e). The total debt owed to LGS by the debtor is $147,077.28. The total of the December runs owed by LGS to the debtor is $148,660.81. Because the debtor's petition was filed on December 22, 1983, LGS has a right to set-off 21/31st of that latter amount, or $100,705.71. That right to set-off constitutes a secured claim. The trustee will therefore be ordered to pay that amount to LGS. A judgment consistent with this opinion will be signed upon submission.