**In re CENTERGAS, INC., Debtor.**

**CENTERGAS, INC., Plaintiff,**

**v.**

**CONOCO, INC., Defendant.**

**Bankruptcy No. 292–20438–11. Adv. No. 293–2028.**

United States Bankruptcy Court, N.D. Texas, Amarillo Division.

Sept. 27, 1994.

---

Don L. Patterson, Coleman Young and Kirt E. Moelling, Hinkle, Cox, Eaton, Coffield & Hensley, Amarillo, TX, for debtor.

S. Tom Morris, Larry Sherman, and Michael G. Smith, Gibson, Ochsner & Adkins, L.L.P., Amarillo, TX, for Conoco, Inc.

## MEMORANDUM OF OPINION ON SETOFF OR RECOUPMENT

JOHN C. AKARD, Bankruptcy Judge.

The issue in this matter is whether prepetition credit card billing offsets and cash re-

ceived by Conoco, Inc. (Conoco) within 90 days prior to bankruptcy are permissible recoupments or whether they are offsets prohibited by § 553 of the Bankruptcy Code.[1] The court finds that the $179,681.77 Conoco took was an impermissible offset and that Conoco must return the funds to the Debtor.[2]

## FACTS [3]

Centergas, Inc. (Debtor) sold Conoco products under a Jobber Franchise Agreement (JFA) dated April 1, 1990. The parties also operated under an agreement that Conoco could electronically draft the Debtor's bank account for any balances owing after credit card invoices from Debtor were credited to its account with Conoco. In January 1992, the Debtor's bank dishonored three electronic drafts and Conoco refused to allow the Debtor to purchase further goods on credit after January 14. At that time, the Debtor owed Conoco $293,136.04. Subsequent Debtor purchases were made on a cash-only basis. The Debtor filed a Chapter 11 petition on May 21, 1992. In the 90 days preceding bankruptcy, Conoco applied $199,225,41 in credit card invoices to Centergas' pre-January 14 debt pursuant to the offset provision contained in paragraph 6 of the JFA.[4] The parties agree that the Debtor overpaid Conoco for its initial cash purchases by rounding up its payments and that on February 21, 1992, the 90th day before bankruptcy, Conoco held invoices not yet applied against Debtor's account. Therefore, the parties stipulated Debtor's maximum recovery is $179,681.77. The Debtor asserts that it is entitled to recover this sum as an impermissible setoff.

---

1. The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* References to section numbers are references to sections in the Bankruptcy Code.

2. The court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (*O*).

3. The court adopts the stipulations of fact and the parties' exhibits contained in their joint Pretrial Order and will recite only those facts necessary to a decision on this matter.

## STATUTE

The Bankruptcy Act of 1898 addressed setoffs and counterclaims in Section 68 (11 U.S.C. § 108), stating:

a. In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid.

b. A set-off or counterclaim shall not be allowed in favor of any debtor of the bankrupt which (1) is not provable against the estate and allowable under subdivision g of section 57 of this Act; or (2) was purchased by or transferred to him after the filing of the petition or within four months before such filing, with a view to such use and with knowledge or notice that such bankrupt was insolvent or had committed an act of bankruptcy.

Section 553 of the Bankruptcy Code reads in pertinent part:

§ 533. **Setoff.**

(a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that—

. . . .

(b)(1) . . . [I]f a creditor offsets a mutual debt owing to the debtor against a claim against the debtor on or within 90 days before the date of the filing of the petition,

---

4. Paragraph 6 of the JFA reads as follows: "If Jobber fails to make a timely payment of any amount due, in accordance with the terms hereof, then Conoco shall, in addition to any other rights or remedies available to it, have the right, but not the obligation to set off against any amounts then due to Jobber, up to the total amount outstanding, by providing prior telephonic notice to Jobber, later confirmed in writing."

then the trustee [5] may recover from such creditor the amount so offset to the extent that any insufficiency on the date of such setoff is less than the insufficiency on the later of—

(A) 90 days before the date of the filing of the petition; and

(B) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency.

(2) In this subsection, "insufficiency" means amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim.

(c) For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition.

## DISCUSSION

### Recoupment

■ Conoco asserts that its actions should be characterized as recoupment, rather than setoff. Recoupment means "to recover a loss by a subsequent gain. In pleading, to set forth a claim against the plaintiff when an action is brought against one as a defendant. A keeping back something which is due, because there is an equitable reason to withhold it." BLACK'S LAW DICTIONARY, 1275 (6th ed. 1990.) It arose as a pleading rule under common law and permitted the joinder of plaintiff's and defendant's claims in order to avoid having to file separate suits on two claims. Thus, a defendant could raise a countervailing claim that arose out of the same transaction as a defense. Quittner, Arnold M., *Setoffs and Recoupment*, 16TH ANN. CURRENT DEVELOPMENTS IN BANKR. & REORGANIZATION. COM.LAW & PRAC. COURSE HANDBOOK SERIES. PRACTISING LAW INST. (1994).

The federal counterclaim and cross-claim practice currently used is the result of an extensive period of "judicial and legislative development designed to facilitate the adjudication of all disputes that exist between the parties to an action. More specifically the counterclaim practice set forth in [Fed. R.Civ.P.] Rule 13 is a continuation of the code counterclaim, which in turn had its basis in the common law doctrines of setoff and recoupment." 6 CHARLES A. WRIGHT *ET AL.*, FEDERAL PRACTICE AND PROCEDURE § 1401. (2d ed. 1990)

■ In Texas, the general term "counterclaim" includes recoupment, defined as "the right to set off unliquidated damages." 67 TEX.JUR.3D, *Setoffs, Counterclaims and Cross Actions* § 4 (1989) (citing *Southern Pacific Co. v. Porter*, 160 Tex. 329, 331 S.W.2d 42 (1960)). It has narrow scope in Texas and it "must be predicated on a factor that would vitiate a contract sued on, either in whole or in part, as of the time the contract was made." 331 S.W.2d at 45.

■ The doctrine of recoupment is an equitable remedy. Neither the Bankruptcy Act nor the Bankruptcy Code mentions recoupment. However, some courts have narrowly construed it and applied it sparingly "as an exception to the general rule against preferring one creditor over another." *Electronic Metal Prods., Inc. v. Honeywell, Inc.*, 95 B.R. 768, 770 (D.Colo.1989) (citation omitted). Two limitations have been noted to the doctrine. First, there must be only one contract. Second, there must be some kind of an overpayment, either accidental or contractual. *In re Public Serv. Co.*, 107 B.R. 441, 445–46 (Bankr.D.N.H.1989). Other courts have permitted recoupment where the parties were operating under a contract which specifically allowed it. See *Blue Cross v. Monsour Medical Ctr. (In re Monsour Medical Ctr.)*, 11 B.R. 1014 (W.D.Pa.1981); *In re Yonkers Hamilton Sanitarium Inc.*, 22 B.R. 427 (Bankr.S.D.N.Y.1982), *aff'd*, *Sapir v. Blue Cross/Blue Shield (In re Yonkers Hamilton Sanitarium Inc.)*, 34 B.R. 385 (S.D.N.Y.1983); *In re Berger*, 16 B.R. 236 (Bankr.S.D.Fla.1981).

5.   The debtor in a Chapter 11 case has the powers   of a trustee.   § 1107(a).

"Recoupment allows a defendant to reduce the amount of a plaintiff's claim by asserting a claim against the plaintiff *which arose out of the same transaction* to arrive at a just and proper liability on the plaintiff's claim." *Holford v. Powers (In re Holford),* 896 F.2d 176 (5th Cir.1990) (citing COLLIER ON BANKRUPTCY ¶ 553.03 (15th ed. 1984)). Recoupment is often applied where the claims arise from a contract which calls for advance payments based on estimates of what will be owed, with the actual amount owed determined later. *University Medical Ctr. v. Sullivan (In re University Medical Ctr.),* 973 F.2d 1065 (3d Cir.1992) (citing *Ashland Petroleum Co. v. Appel (In re B & L Oil Co.),* 782 F.2d 155, 157 (10th Cir. 1986)).[6] However, the fact that a contract exists between the parties does not automatically enable the creditor to avail itself of recoupment. 973 F.2d at 1080. Furthermore, "[the] fact that the same two parties are involved, and that a similar subject matter gave rise to both claims ... does not mean that the two arose from 'the same transaction'." *Lee v. Schweiker,* 739 F.2d 870, 875 (3d Cir.1984).

In *Newbery Electric, Inc. v. MCI Constructors, Inc. (In re Newbery Corp.),* 145 B.R. 998 (9th Cir. BAP 1992), the bankruptcy appellate panel upheld the bankruptcy court's decision allowing MCI to recoup prepetition damages from postpetition rents claimed by the debtor. This case is distinguishable from the usual recoupment scenario since it deals neither with overpayments nor unjust enrichment. Additionally, nowhere does it mention the exception of § 553(b). Indeed, in his dissent, Judge Russell complained that the majority misapplied the doctrine of recoupment. He preferred the reasoning on setoff contained in *Rakozy v. Reiman Constr. (In re Clowards, Inc.),* 42 B.R. 627 (Bankr.D.Idaho 1984).

### Unjust Enrichment

A review of the cases dealing with the doctrine of recoupment shows a common theme running through them: There were advance payments or overpayments made to the debtor which, if kept by the debtor, constituted unjust enrichment.

The creditor, a defrauded lessor, was permitted to recoup from rental payments due under the lease, losses caused by the debtor's fraud in the inducement of that same lease. *Holford v. Powers (In re Holford),* 896 F.2d 176 (5th Cir.1990).

A creditor could recoup overpayments made prior to bankruptcy by withholding money owed for purchases it made after bankruptcy. The court permitted recoupment because to do otherwise would give the debtor's other creditors a windfall. "Further, bankruptcy courts apply recoupment as an equitable doctrine. Here we face a question of unjust enrichment. The situation before us is not one in which the creditor seeking relief consciously made a loan, extended credit, or made payments required by a contract, as did the bankrupt's ordinary creditors. Ashland paid the sums to B & L by mistake. Although common sharing may be required in some mistake cases by the bankruptcy laws' cleavage rules, allowing B & L's other creditors to share in this money would give them a windfall, a classic case of unjust enrichment." *Ashland Petroleum Co. v. Appel (In re B & L Oil Co.),* 782 F.2d 155 at 159 (10th Cir.1986).

Where a creditor paid the debtor advance commissions, it was permitted to withhold that amount in postpetition commissions. *In re Ruiz,* 146 B.R. 877 (Bankr.S.D.Fla. 1992).

A debtor was not permitted to retain $1.5 million in non-residential customer deposits because to do so would give the debtor a windfall, "a classic case of unjust enrichment." *In re Public Serv. Co.,* 107 B.R. 441 (Bankr.D.N.H.1989).

Where the debtor was paid by mistake, the court permitted the creditor to recoup its

---

6. B & L itself was criticized for extending the doctrine of recoupment. *See* Tonya Noonan Herring, Note, *Bankruptcy—The Recoupment Doctrine: Ashland Petroleum Company v. Appel,* 17 N.MEX.L.REV. 421 (1987).

past overpayments as well as recover the balance of its overpayment from future runs. *Fiero Prod., Inc. v. Conoco, Inc. (In re Fiero Prod., Inc.),* 102 B.R. 581 (Bankr. W.D.Tex.1989).

A creditor could recoup production costs advanced before the petition from pre- and postpetition proceeds payments owed. The court stated that "[p]erhaps a more compelling equitable explanation for allowing recoupment under binding executory contracts is that unlike divisible agreements which are subject to renegotiation on regular bases, the creditor undertakes one risk farther back in time, presumably when the debtor was financially stable. Where key terms of a contract can be adjusted, for instance, monthly, the claimant is likely to be cognizant of the debtor's ailing financial health, perhaps by late or insufficient payments, and thus knowingly undertakes a new risk with each installment." *Security Pacific Nat'l Bank v. Enstar Petroleum Co. (In re Buttes Resources Co.),* 89 B.R. 613, 616 (D.Tex.1988).

The court ruled that funds the Department of Labor withheld from the debtor service contractor were property held for the benefit of undercompensated employees. *Brock v. Career Consultants, Inc. (In re Career Consultants, Inc.),* 84 B.R. 419 (Bankr.E.D.Va.1988).

The court permitted the government to recover advance production payments made prepetition against the value of goods delivered postpetition. *Mohawk Indus., Inc. v. United States (In re Mohawk Indus., Inc.),* 82 B.R. 174 (Bankr.D.Mass. 1987).

The court allowed the creditor to recoup under its contract's progress payment clause for excess progress payments made prepetition from amounts due for work done postpetition. *United States v. Midwest Serv. & Supply Co. (In re Midwest Serv. & Supply Co.),* 44 B.R. 262 (D.Utah 1983).

A creditor could recoup prepetition medicare overpayments against postpetition billings. *In re Yonkers Hamilton Sanitarium Inc.,* 22 B.R. 427 (Bankr.S.D.N.Y. 1982), *aff'd Sapir v. Blue Cross/Blue Shield (In re Yonkers Hamilton Sanitarium Inc.),* 34 B.R. 385 (S.D.N.Y.1983).

A creditor could recoup prepetition advance royalty payments against postpetition royalties accrued. *Waldschmidt v. CBS, Inc.,* 14 B.R. 309 (M.D.Tenn.1981).

■ Courts are guided by general principles, some of which are too broad to be stated as rules. Unjust enrichment is one such principle, and courts often hold that one "who has been unjustly enriched at the expense of another is required to make restitution to the other.... Thus, where a person who is indebted to another makes an overpayment under a mistake of fact, the payee would be unjustly enriched by the amount of the overpayment if he were permitted to keep it and the payor would be unjustly deprived of that amount if he were not permitted to recover it." RESTATEMENT OF THE LAW OF RESTITUTION: QUASI CONTRACTS AND CONSTRUCTIVE TRUSTS § 1 at 12–13 (1988).

### Setoff

■ In contrast, setoff involves a claim of the defendant against the plaintiff which arises out of a transaction which is different from that on which the plaintiff's claim is based. *See, Rakozy v. Reiman Constr. (In re Clowards, Inc.),* 42 B.R. 627, 628 (Bankr.D.Idaho 1984) (citations omitted). One bankruptcy court stated that "[w]hen Congress enacted Section 553 it intended to strike a fair balance between protecting a creditor's state law right to setoff and deterring creditors from exercising the right of setoff which could hasten a debtor's descent into bankruptcy." *Lawndale Steel Co. v. Magic Steel Co. (In re Lawndale Steel Co.),* 155 B.R. 990, 996 (Bankr.N.D.Ill.1993). This statement is reinforced by the legislative history published on § 553. The House and Senate Reports on the Bankruptcy Reform Act of 1978 stated: "This section preserves ... the right of setoff in bankruptcy cases now found in section 68 of the Bankruptcy

Act.... The section states that the right of setoff is unaffected by the bankruptcy code except to the extent ... the creditor improved his position in the 90–day period (similar to the improvement in position test found in the preference section, 547(c)(5)). Only the last exception is an addition to current law...." H.R.REP. No. 595, 95th Cong.; 1st Sess. 377 (1977); S.REP. No. 989, 95th Cong., 2d Sess. 91–92 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5877, 5878, 6333.

Although the parties cite various cases on the issues of setoff and recoupment, most of them do not speak to the exception for payments received during the 90–day period immediately preceding the bankruptcy filing.

Addressing postpetition offsets/recoupment of prepetition debts on the basis of overpayment for prepetition services. *See, e.g., University Medical Ctr. v. Sullivan (In re University Medical Ctr.),* 973 F.2d 1065 (3d Cir.1992).

Retention of rents was recoupment rather than offset, but in a § 362 context. The case is silent as to the § 553(b) 90–day preference period. *Holford v. Powers (In re Holford),* 896 F.2d 176 (5th Cir.1990).

Recoupment denied since the parties' claims did not arise out of the same transaction. *First Comanche Bank v. Boyd (In re Boyd),* 96 B.R. 694 (Bankr.N.D.Tex. 1989).

In *Sandoz v. Conoco, Inc. (In re Delta Energy Resources, Inc.),* 67 B.R. 8 (Bankr. W.D.La.1986), Louisiana Gas System (LGS) claimed a right of setoff based on overcharges made by the debtor for gas produced and then billed at prices not authorized by the Federal Energy Regulatory Commission. It claimed a second right of setoff because of prices charged in excess of the maximum lawful price. *Id.* at 10. The court found that all transactions giving rise to the debt occurred prepetition, even though the refund order was entered later, and LGS was overcharged before the petition was filed. *Id.* at 12. Therefore, it permitted LGS to setoff and ordered the trustee to pay that amount to LGS. *Id.* The case did not mention the § 553(b) exception.

Conoco provided the court with two unpublished cases in which recoupment was permitted: *In re Warin Oil Co.,* No. 88–2431–C J (Bankr.S.D.Iowa Sept. 29, 1989), and *ENOLAM, INC. v. Conoco (In re ENOLAM, INC.),* No. CIV–92–448–A (W.D.Okla. June 22, 1992). In these cases the courts construed sales pursuant to the JFA and credit card agreement as one transaction. However, the facts of both cases are distinguishable from those of the instant case. First, the debtors in those cases were not put on a cash basis after the accounts became delinquent. Second, neither case discussed the 90–day preference exception of § 553(b). Third, those cases dealt primarily with alleged violations of the automatic stay and conversion of estate funds.

In his concurring opinion in *California Canners & Growers v. Military Distribs. (In re California Canners & Growers),* 62 B.R. 18 (9th Cir. BAP 1986), Judge Elliott discoursed on the propriety of using recoupment for a prepetition claim at all. He stated:

Full payment of all or part of a claim would be a preference over other general creditors who, unless given special treatment under the Bankruptcy Code, would typically be paid less than 100% on their claim through a Chapter 7 liquidation or a Chapter 11 or 13 plan.

. . . .

Inferring that Congress intended to allow a general creditor to recoup his claims unconstrained even by the limits on setoff simply because recoupment, by definition, is not a setoff cuts directly against the equal distribution policy of the bankruptcy laws. I think the inference is incorrect. As the Supreme Court has noted, "The broad purpose of the Bankruptcy Act is to bring about an equitable distribution of the bankrupt's estate ... and if one claimant is to be preferred over others, the purpose should be clear from the statute." That rule applies equally under the Bankruptcy Code. I am unable to find any statutory authorization for granting preferential

treatment to a general creditor solely because that creditor's claim arose from the same transaction as the trustee's or debtor in possession's claim.

*Id.* at 23–24 (citations omitted). This court finds Judge Elliott's reasoning persuasive.

■ Even if it did not agree with Judge Elliott, this court would have trouble applying the equitable doctrine of recoupment in this case. The nature of the transactions between the parties shows many separate sales of different Conoco products by the Debtor to third party customers or to other retailers who paid by credit card or in cash. The Debtor was delinquent on the products it bought from Conoco at the time these transactions took place and by statute was presumed insolvent in the 90 days prior to bankruptcy. § 553(c). Conoco applied everything it got to the existing debt—whether credit card receipts from Debtor's sales to customers or cash paid by the Debtor on its delinquent debt. It cannot be said that these payments and credits arose from the same transaction. Although the JFA governed the general relationship between the Debtor and Conoco, each sale from Conoco to the Debtor was a separate transaction. Additionally, the JFA spoke to offset only. Recoupment was not mentioned.

■ In the alternative, even if the various separate sales could be construed as one transaction under the JFA, the parties, since the Debtor's NSF payments, had modified their dealings to a cash only arrangement. The cash purchases were clearly different transactions from the prior credit sales.

*Improvement of Position*

■ The Bankruptcy Code, like the Bankruptcy Act before it, does not permit one unsecured trade creditor to improve its position at the expense of other trade credi-

tors. § 553(b) [7]. In *Braniff Airways, Inc. v. Exxon Co.*, 814 F.2d 1030 (5th Cir.1987), the Fifth Circuit found that the debt and claim were mutual prepetition debts and the creditor had a right of setoff. However, it then remanded the case for a determination of whether the creditor improved its position in violation of § 553 of the Bankruptcy Code.

In *Lee v. Schweiker*, 739 F.2d 870 (3d Cir.1984), the court permitted the Social Security Administration to keep what it withheld from the debtor's disability checks during the 90–day period preceding bankruptcy to recover prior overpayments because the government did not violate the improvement-in-position test of § 553. *Id.* at 877.

In *Exxon Corp. v. Compton Corp. (In re Compton Corp.)*, 22 B.R. 276 (Bankr. N.D.Tex.1982), the court held that the ninety-day improvement of position test does not apply to postpetition setoffs. In *Compton*, the creditor did not engage in "self help" by offsetting prepetition. It came into court and moved to lift the stay to permit offset. *Id.* at 278. The court permitted it to do so, postpetition, but noted that "this Court may decide to weigh the improvement of position test when framing the relief to be granted the plaintiff." *Id.*

The *Compton* court stated:

Two forms of direct limitation on setoffs are contained in § 553. In § 553(a), certain limitations regarding transfers of claims and the accrual of claims during the 90 days preceding filing of the petition are outlined. The second limitation is contained in § 553(b) and concerns only the creditor's right to implement the setoff during the 90 days prior to bankruptcy. It provides that pre-petition setoffs may be reduced and recovered by the trustee to the extent that the creditor's position is improved within the 90–day period.

*Id.* at 277.

In *Togut v. Chemical Bank (In re Hecht)*, 41 B.R. 701 (Bankr.S.D.N.Y.1984), the bank-

---

7. The Bankruptcy Act forbids a preference of one creditor over another by an insolvent person, making any such preference an act of bankruptcy, and providing that any such preference will be set aside if made within four months prior to the bankruptcy, irrespective of the intent of the debtor. This does not prevent sales by the insolvent debtor prior to bankruptcy if made in good faith for a reasonable return.
William F. Walsh, A Treatise on Equity, 320–21, (1930) (citations omitted).

ruptcy trustee sued to recover a portion of a setoff exercised by a bank of the debtor's checking account funds against notes the debtor owed it. The judge permitted the trustee to recover the amount by which the insufficiency on the date of setoff was less than it would have been if the setoff occurred 90 days before the bankruptcy petition was filed. Chemical improved its position by $86,825.77. The court said:

> It is clear that in drafting Code Section 553(b) Congress intended to limit the amount a creditor can offset under state law. Since federal bankruptcy law is preemptive, such Congressional intent must take precedence over any state law to the contrary:
>
>> When the language of an avoiding power established under Federal bankruptcy law "is plain, and if the law is within the constitutional authority of the law-making body which passed it, the sole function of the courts is to enforce it according to its terms," *Central Trust Co. v. Official Creditors Comm. of Geiger Enters., Inc.,* 454 U.S. 354, 102 S.Ct. 695 [70 L.Ed.2d 542] (1982), and [state law] policy arguments against its enforcement are not relevant.

*In re Richardson,* 23 B.R. 434, 448 (Bankr. D.Utah 1982). *See also In re Frank,* Bankr.L.Rep. (CCH) ¶ 69,830 (1984).

This court thus finds that the fact that the debt to Chemical was unmatured ninety days prior to the petition does not justify a conclusion that an insufficiency cannot be calculated at that point. If this Court were to hold otherwise, the basic purpose behind 11 U.S.C. § 553(b), to limit the improvement in one creditor's position and thus benefit all unsecured creditors, would be frustrated.

*Id.* at 706.

The court distinguished *Rakozy v. Reiman Constr. (In re Clowards),* 42 B.R. 627 (Bankr.D.Idaho 1984). In *Clowards,* recoupment was allowed even though there was no overpayment involved. The creditors owed the debtor amounts due under uncompleted prepetition construction contracts. When they suffered damages due to breach of contract by the debtor, the court allowed them to recoup them. In the instant case, any damages to Conoco were incurred as a result of its own business decision to continue doing business with the Debtor on a cash basis.

### Equality is Equity

The concept of equality or impartiality, in Latin, *aequum,* was the basis of justice as conceived by Roman jurists and was, from the outset, incorporated into the equity jurisprudence created by the English court of chancery, and has been perpetuated until the present day. JOHN NORTON POMEROY, A TREATISE ON EQUITY JURISPRUDENCE AS ADMINISTERED IN THE UNITED STATES OF AMERICA V. I § 405, (4th ed. 1918.). Common law protected individual rights, equity maintains the rights of *all* who are connected by *any* common bond of interest or of obligation. *Id.* This is the source of pro rata distribution.

> Wherever a number of persons had separate claims against the same individual or the same fund, the law generally gave certain classes of such claimants a complete precedence, even to the exhaustion of the fund if necessary, over the others, arising solely from the *form* of their security; as for example, bond and other specialty creditors over simple contract creditors.

*Id.* at § 406.

> Whenever several persons are all entitled to participate in a common fund, or are all creditors of a common debtor, equity will award a distribution of the fund, or a satisfaction, of the claims, in accordance with the maxim, Equality is equity; in other words, if the fund is not sufficient to discharge all claims upon it in full, or if the debtor is insolvent, equity will incline to regard all the demands as standing upon an equal footing, and will decree a *pro rata* distribution or payment.

*Id.* at § 408. Both the Bankruptcy Act and the Bankruptcy Code codified this maxim of equity.

■ "An important purpose of bankruptcy law is to prevent individual creditors from starting a 'run' on the debtor by assuring that they will be treated equally if the debtor is precipitated into bankruptcy, rather than being given either preferential treatment for having jumped the gun or disadvantageous treatment for having hung back." *In re Elcona Homes Corp.*, 863 F.2d 483, 484 (7th Cir.1988). Unless a creditor can prove countervailing equitable consideration of unjust enrichment, that creditor should not receive preferential treatment over others similarly situated merely by characterizing its action as "recouping" rather than the offset it actually was.

## CONCLUSION

■ Conoco, pursuant to its agreement with the Debtor, should have sent the credit card proceeds, after deduction of its service charge, to the Debtor. Since it failed to do so, the amount by which Conoco bettered its position in the 90–day preference period, $179,681.77, constitutes property of the Debtor's estate and must be returned to the Debtor. The court also grants the Debtor prejudgment interest at the federal rate provided by 28 U.S.C. § 1961 from the date of the adversary filing.[8]

---

8. This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Fed. R.Bankr.P. 7052 which is made applicable to Contested Matters by Fed.R.Bankr.P. 9014. This Memorandum will be published.