### GIBSON v. CENTRAL NAT. BANK OF McKINNEY.

No. 12435.

United States Court of Appeals
Fifth Circuit.

Dec. 23, 1948.

---

O. H. Woodrow, of Sherman, Tex., and Ralph D. Baker, of Dallas, Tex., for appellant.

Roland Boyd, of McKinney, Tex., for appellee.

Before HUTCHESON, SIBLEY and McCORD, Circuit Judges.

McCORD, Circuit Judge.

C. A. Gibson, Trustee of Griffin Grain Company, a bankrupt corporation, sued to recover from the Central National Bank of McKinney, Texas, a balance of $1,735.19 remaining in the possession of the Bank after it sold certain collateral pledged to the Bank by the Griffin Company prior to bankruptcy.

The material facts upon which decision must turn, some of which were stipulated and some found by the trial court, reveal that the Griffin Company was engaged in buying, storing and selling corn and other grains; that the banking business of the Griffin Company was handled through the Central National Bank, and in the course of its business with the Bank the Griffin Company was required to furnish as collateral to secure its running indebtedness warehouse receipts covering ten thousand bushels of corn; that in the latter part of December, 1944, the Griffin Company owed the Bank $8,634 on bills of exchange, plus a note in the amount of $4,120.67; that the Bank was secured at this time by the warehouse receipts for the corn, plus a deposit to the credit of the Griffin Company in the amount of $2,016.41; and that the net indebtedness of the Griffin Company to the Bank, for which the corn warehouse receipts were pledged as security, was therefore $10,738.26.

On December 24, 1944, the Central Bank received a check, drawn on it by the Griffin Company, for $1,992.63. This check was sent through the mail from the First State Bank of Celina, Texas, and had been obtained by the Celina Bank from the Griffin Company in payment for a carload of wheat. When the Central Bank received the check from the Celina Bank, it had already learned of the failure of the Griffin Company, and intended to dishonor the check. However, in the Christmas rush, this check was inadvertently mailed out to another bank, which error brought on litigation culminating in the Central Bank being held liable for the amount of the check. The total indebtedness of the Griffin Company to the Central Bank was thus increased to $14,747.30, counting the amounts still owed on bills of exchange and the outstanding note.

On January 3, 1945, a receiver was appointed for the Griffin Company by a state court. Thereafter, on February 9, 1945, the receiver permitted the Central Bank to take possession of and sell the 10,000 bushels of corn for which it held the warehouse receipts. The corn was sold at an advanced price, and the gross income from such sale was $12,473.45. When all necessary expenses incurred in selling the corn, such as weighing, trucking, warehousing and insurance were paid, the Central Bank had left a net balance of $11,766.66 in its possession. Thus, after the sale of the corn pledged as collateral, the mutual debts and credits existing as between the Central

Bank and the Bankrupt, Griffin Grain Corporation, were as follows:

Griffin Grain Company owed Bank:

Bills of Exchange ............. $8,634.00
Note ........................ $4,120.67
Celina Bank check ............ $1,992.63

    Total ...................$14,747.30

Griffin Grain Company credits:
On Deposit ................... $2,016.41
Sale of Corn after necessary
    expenses were deducted......$11,766.66

    Total ...................$13,783.07

The Trustee contends that the Central Bank should not have been allowed to set-off other indebtedness against the collateral in addition to the original debt for which the collateral was given as security; that the debt originally secured by the warehouse receipts for corn was only $10,738.26, and that the loss to the Central Bank resulting from its failure to dishonor the Celina Bank check, as well as the expenses incurred in the sale of the corn, were not properly chargeable against the gross proceeds of the sale; that since the Central Bank realized a gross amount of $12,473.45 from the sale of the corn pledged as collateral, and the original debt secured by it was $10,738.26, there was a balance due the estate of the Bankrupt Griffin Corporation of $1,735.19, which was the amount claimed by the trustee in this suit.

The Central Bank contends that the above balance claimed to be due the estate of bankrupt from the sale of the corn was offset by the additional indebtedness created by the Celina Bank check, and the reasonable and necessary expenses incident to selling the corn, so that instead of the Central Bank owing the Bankrupt a balance of $1,735.19, as claimed by the Trustee, the Bankrupt was still indebted to the Central Bank in the sum of $964.23.

The trial court held that all of the expenses and debts claimed were properly deducted from the balance owed after the corn was sold, with the exception of the item of attorneys' fees, which he considered " * * * an expense that the bank indulged in for its own protection * * *", and " * * * not an indulgence, for which the estate should be liable. * * *" Judgment was accordingly entered for the defendant, and this appeal was taken from that action.

We are of opinion the trial court properly allowed Central Bank to set-off the other and additional indebtedness against the collateral, in addition to the debt for which the collateral was pledged as security. Title 11 U.S.C.A. § 108, sub. a; Patten v. Hill County, Tex.Civ.App., 297 S.W. 918; Moore v. Joseph, Tex.Civ.App., 40 S.W.2d 948; In re Searles, D.C., 200 F. 893; Germania Sav. Bank & Trust Co. v. Loeb, 6 Cir., 188 F. 285.

We find no merit in appellant's contention that the Central Bank, in holding the balance realized from the sale of the corn pledged as collateral and setting-off other and additional indebtedness against it, thereby created a preference over other creditors in its favor.[1] The further contentions that Central Bank had waived its right to set-off the additional indebtedness, and that the expenses incurred in the sale of the corn were not necessary or reasonable, are wholly without merit. The statute expressly authorizing and governing the set-off transaction reads as follows:

Title 11 U.S.C.A. § 108, sub. a: "In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid."

We find no reversible error in the record, and the judgment is accordingly

Affirmed.

[1] In this connection, the trial court found: " * * * There, is no effort, that I have been able to discover here, of any sort, that the debtor was seeking to prefer this creditor. On the contrary, the debtor seemed to be getting what it could out of anybody, and, everybody, according to the statement in open Court, that it was a pretty bad failure. * * *"