**JEFFERSON COUNTY COOPERATIVE ASSOCIATION, Appellee,**

v.

**NORTHEAST KANSAS PRODUCTION CREDIT ASSOCIATION, Appellant.**

**In re Thomas Michael RAGAN, Debtor.**

No. 81–4225.

Bankruptcy No. 81–40116.

United States District Court, D. Kansas.

Oct. 8, 1982.

**4**

Everett Fritz, Kansas City, Kan., for appellee.

Lloyd C. Swartz, Topeka, Kan., Trustee.

Cary L. Standiferd, Topeka, Kan., for debtor.

Marlin A. White, Holton, Kan., Richard O. Skoog, Skoog & Latimer, Ottawa, Kan., Ralph E. Skoog, Topeka, Kan., for appellant.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This is a bankruptcy appeal brought by appellant Northeast Kansas Production

Credit Association (PCA). PCA had a security interest in the grain and crops of debtor Thomas Michael Ragan after March 29, 1979.[1] In April and May 1980, the debtor bought seed, herbicides, insecticides and fertilizer for his milo crop from the appellee, Jefferson County Cooperative Association (Coop). The crop was later stored with the Coop. This appeal requires this court to review the decision of the bankruptcy court that the Coop has a warehouseman's lien for charges on the seed, herbicides, insecticides and fertilizer which takes priority over PCA's security interest.[2]

The parties agree with the opinion of the bankruptcy court that K.S.A. 84–9–310 grants priority to statutory liens over security interests under certain circumstances. The parties also agree that *storage* charges on the debtor's milo crop are covered by the Coop's warehouseman's lien pursuant to K.S.A. 34–266 and have priority over PCA's security interest under K.S.A. 84–9–310. The parties disagree, however, over what other charges are covered by the warehouseman's lien.

The bankruptcy court held that the credit advanced by the Coop to the debtor for the seed, herbicides, insecticides, and fertilizer for crops eventually stored with the Coop are covered by the warehouseman's lien. We disagree.

K.S.A. 34–266 provides:

[A] warehouseman shall have a lien on grain deposited or on the proceeds thereof in his hands for all lawful charges for storage and preservation of the grain; also for all lawful claims for money advanced, interest, insurance, transportation, labor, weighing, cooperage and other charges and expenses in relation to such grain; also for reasonable charges and expenses for notice and advertisements of sale, and for sale of grain where default has been made in satisfying the warehouseman's lien.

---

1. Whether the security interest was perfected or whether the financing statement inadequately described the real estate on which the crops were growing was not decided by the bankruptcy court and we do not pass on it here.

2. The bankruptcy court's decision is reported at 15 B.R. 376 (1981).

In construing this statute, we begin with the proposition that statutory liens should be strictly construed. See *Goodyear Tire & Rubber Co. v. Jones,* 317 F.Supp. 1285, 1288 (D.Kan.1968) *aff'd,* 433 F.2d 629 (10th Cir.1970) (citing *Bridgeport Machine Co. v. McKnab,* 136 Kan. 781, 786, 18 P.2d 186, 188 (1933)). "Those claiming such a lien must bring themselves clearly within the provisions of the statute authorizing it." *Id.* We do not consider strict construction to contradict the mandate of the Kansas Legislature that the law providing for grain warehouseman's liens be "liberally interpreted and construed to effectuate its general purpose." K.S.A. 34–2,103. The general purpose of the Kansas Legislature in 1931 was to regulate the activity of warehousing. Unless the charges covered by the lien allowed under K.S.A. 34–266 are confined to those relating to warehousing, we do not believe the "general purpose" of the statute is effectuated.

The bankruptcy court held that the Coop's charges for seed, herbicide, insecticide, and fertilizer constituted "other charges and expenses in relation to such grain" under K.S.A. 34–266. For the reasons which follow, we believe this interpretation of the warehouseman's lien statute is too broad.

"Public warehouseman" is defined in K.S.A. 34–223 as "a person lawfully engaged in the business of storing grain for the public." It is consistent with the objectives of the warehouseman's lien statute and the strict construction of that law to limit the claims covered by the statute to those related to stored grain and the business of storing grain. While there is no question that the Coop is a warehouseman, we do not believe the charges for seed, herbicide, insecticide and fertilizer relate to *stored* grain or the business of storing grain.[3] Growing crops and storing grain are two separate activities. Expenses involved with growing crops do not concern

warehousing and should not be covered by a warehouseman's lien.

"Grain" is defined as "wheat, corn, oats, barley, rye, soybeans, grain sorghums and any grains upon which federal grain standards are established, also seeds generally stored by warehouses, if special permission is granted by the chief grain inspector." K.S.A. 34–223. It is clear from this definition as well as from the context of the entire act that "grain" is considered to be wheat, corn, et cetera *after* harvest. The term "such grain" as used in the warehouseman's lien statute refers to "grain deposited" with the warehouseman, i.e., harvested grain. Hence, "other charges and expenses in relation to such grain" means charges and expenses related to harvested grain deposited with a warehouseman. It does not refer to expenses involved with growing grain.

We do not dispute that some relationship exists between money spent for fertilizer, for example, and the grain stored in a warehouse. A similar relationship exists between stored grain and the money spent for fuel, farm machinery and other farm supplies. In our opinion, however, it is simpler and more practical to limit charges covered by the warehouseman's lien to those directly related to storing grain. This limitation is also consistent with the strict construction applied to statutory liens.

We acknowledge that our opinion conflicts with the decision of the Washington Supreme Court in *State Bank of Wilbur v. Almira Farmers' Warehouse Co.,* 123 Wash. 354, 212 P. 543 (1923). There, the court found that a warehouseman's lien under a similar statute covered expenses for supplies used to grow wheat subsequently stored by the warehouseman. We think this decision is erroneous because it does not strictly construe the lien statute and ignores the definition of "goods" contained in the statute. The Washington state court decision interpreted a section of

---

**3.** Indeed, there is no indication in the facts of this case that the Coop had any guarantee that the crops grown with the supplies sold to the debtor would be stored in its warehouse. The debtor apparently could have stored his milo in a different warehouse.

**6**

the Uniform Warehouse Receipts Act that is identical to K.S.A. 34–266 except for the fact that the Kansas law applies only to "grain" not to all "goods." The term "goods" is defined in the Uniform Warehouse Receipts Act as "chattels and merchandise in storage, or which has been or is about to be stored." K.S.A. 82–158 (1923) (the Kansas version of the Uniform Warehouse Receipts Act since repealed by the passage of the Uniform Commercial Code). Of course, in *State Bank of Wilbur* the court did not confine the coverage of the lien to charges and expenses in relation to "chattels and merchandise *in storage.*" Instead, coverage was extended to expenses made for growing crops not in storage and not about to be stored. In our opinion, this construction was incorrect.[4]

■ Finally, the view that the grain warehouseman's lien covers expenses related to growing crops eventually stored with the warehouseman is somewhat inconsistent with the possessory aspect of the lien. The warehouseman's lien is generally considered a possessory lien. Under K.S.A. 34–268, a warehouseman may lose his lien upon grain when he surrenders possession of the grain. In the instant case, the warehouseman did not have possession of the grain in question when the seeds, herbicides, insecticides, and fertilizer were sold. We think a proper construction of the warehouseman's lien statute limits the charges and expenses covered to those incurred by the warehouseman while he is in possession of the grain in question or other grain of the debtor pursuant to K.S.A. 34–267.

In short, we believe the bankruptcy court has construed K.S.A. 34–266 too broadly and, therefore, we shall reverse and remand this case to the bankruptcy court for further proceedings consistent with the opinion. The Clerk is directed to send a

copy of this decision to the Clerk of the Bankruptcy Court.

IT IS SO ORDERED.

---

4. *San Angelo Wine and Spirits Corp. v. South End Warehouse Co.,* 61 P.2d 1235 (Cal.App.1936) is also cited in support of the bankruptcy court's decision. We believe this case is distinguishable on the grounds that the money in question was advanced while the warehouseman was in possession of goods deposited by the debtor. In the case at bar, the Coop was not in possession of the debtor's milo when the expenses and charges in question were incurred.