### In re BUNKER EXPLORATION CO. and WFB Petroleum, Inc., Debtors.

### Bankruptcy No. 83–01403–B.

United States Bankruptcy Court, W.D. Oklahoma.

May 2, 1985.

See also, Bkrtcy., 42 B.R. 297.

Kwame T. Mumina of Andrews, Davis, Legg, Bixler, Milsten & Murrah, Oklahoma City, Okl., for debtors.

E. Edd Pritchett of Pritchett, Schnetzler and Strealy, Oklahoma City, Okl., for claimant Pritchett and Schnetzler.

## MEMORANDUM OPINION AND ORDER

ROBERT L. BERRY, Bankruptcy Judge.

This matter concerns an objection to claim. The sole issue is whether an attorney who renders a division order title opinion is entitled to a lien, pursuant to 42 O.S.1981 § 144.[1] While the issue is a narrow one, the potential for wide-ranging ramifications is broad. It is a case of first impression in Oklahoma. The pertinent facts are as follows.

Sometime in April of 1982, Bunker Exploration Co. (hereinafter "Bunker") contracted with the law firm of Pritchett and Schnetzler (hereinafter "Pritchett") for the rendering of a division order title opinion on the Brown Well No. 1–22. Pritchett performed said title opinion on open account and billed Bunker for the same on September 30, 1982, in the amount of $15,000.00. Payment was not forthcoming; accordingly, on January 26, 1983, Pritchett filed an oil and gas lien against the subject well.[2] Bunker subsequently filed its petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 et seq., in April of 1983. Pritchett filed its proof of claim on July 18, 1983.

As previously stated, the issue is a narrow one, framed by Pritchett in the following proposition: title opinions are services rendered in the operating and completing of an oil and gas well and therefore entitled to lien perfection pursuant to § 144. It is argued that absent a title opinion, a well is not complete, cannot be properly operated and the production cannot be sold. Hence the service of rendering a title opinion is accordingly within the ambit of § 144. To quote Pritchett, "[a]fter a well has been 'dug, drilled, and torpedoed', part of the completion and operating of a well is determining who is entitled to the proceeds of production from the well. This determination is made by the rendering of a Title Opinion by an attorney." Brief in Opposition at 2.

Section 144 of title 42 provides, in pertinent part, for the following:

Any person, corporation, or copartnership who shall, under contract, expressed or implied, with the owner of any leasehold for oil and gas purposes, or the owner of any gas pipeline or oil pipeline, or with the trustee or agent of such owner, *perform labor or services,* including written contracts for the services of a geologist or petroleum engineer, or furnish material, machinery, and oil well supplies *used in the digging, drilling, torpedoing, completing, operating, or repairing of any oil or gas well,* or who shall furnish any oil or gas well supplies, or perform any labor in constructing or putting together any of the machinery used in drilling, torpedoing, operating, completing, or repairing of any gas well, or perform any labor upon any oil well supplies, tools, and other articles used in digging, drilling, torpedoing, operating, completing, or repairing any oil or gas well, shall have a lien upon the whole of such leasehold or oil pipeline, or gas pipeline, or lease for oil and gas purposes, the buildings and appurtenances, the pro-

---

1. See discussion *infra.*

2. There exists no dispute between the parties that the lien was filed within the statutory 120 day period prescribed by 42 O.S.1981 § 142. As we find no evidence to the contrary, our discussion proceeds accordingly.

ceeds from the sale of oil or gas produced therefrom inuring to the working interest, exempting, however, any valid, bona fide reservations of oil or gas payments or overriding royalty interests executed in good faith and payable out of such working interest, and upon the material and supplies so furnished, and upon any oil well supplies, tools, and other articles used in digging, drilling, torpedoing, operating, completing, or repairing any oil or gas well and upon the oil or gas well for which they were furnished, and upon all the other oil or gas well fixtures and appliances used in the operating for oil and gas purposes upon the leasehold for which said material and supplies were furnished or labor or services performed. (emphasis supplied).

In determining the extent of the coverage available under § 144, it is useful to review, briefly, the history of the statute. When called upon to construe the provisions of Okla.Comp.St.1921 § 7464, the predecessor of § 144 and a nearly verbatim recital of the current § 144, the Oklahoma Supreme Court stated that

> [t]he provisions of the mechanics' lien law should be interpreted so as to carry out the object had in view by the Legislature in enacting it, namely, the security of the classes of persons named in the act, upon its provisions being in good faith substantially complied with on their part.

*Oklahoma Tool & Supply Co. v. Smith,* 118 Okl. 228, 230, 246 P. 1090 (1926), *quoting Eberle, et al. v. Drennan, et al.,* 40 Okl. 59, 136 P. 162 (1913). *Accord Minnehoma Oil Co. v. Ross,* 123 Okl. 120, 252 P. 9 (1926). In *Wm. M. Graham Oil & Gas Co. v. Oil Well Supply Co.,* 128 Okl. 201, 264 P. 591 (1927), the Court noted, once again discussing § 7464, that when this section "was enacted by the Legislature of Oklahoma Territory in 1905 ... it had already become apparent ... that the general lien was inadequate to protect *the laborer and the materialman* in their right of compensation for service rendered and materials furnished in the further development of this natural resource [oil]...."

128 Okla. at 209 (emphasis supplied). Only recently our Court noted that "the purpose of the mechanic's and materialmen's lien statutes is to protect materialmen and laborers." *Matter of Mahan & Rowsey, Inc.,* 27 B.R. 883, 885 (Bankr.W.D.Okla. 1983).

█ Statutory liens, such as § 144, stand in derogation of the common law. "[They] must hence be strictly confined to the ambit of the enactment giving [them] birth." *Riffe Petroleum Co. v. Great Nat. Corp., Inc.,* 614 P.2d 576, 579 (Okla.1980) (citations omitted). "The terms prescribed by statute cannot be ignored." *Id.*

█ Pritchett has predicated its argument on equitable principles, that a standard of fairness should be employed in determining whether Pritchett should benefit from § 144. Unfortunately for Pritchett, "a lien [may not] be created out of a sense of fairness if the terms of the statutory lien are found too narrow and have not been met." *Id.* Further, as statutory liens do stand in derogation of the common law, Oklahoma construes its lien statutes strictly. *Bovasso v. Sample,* 649 P.2d 521 (Okla.1982). It is only upon the proper perfectment of the lien that Oklahoma Courts permit a liberal enforcement. *American Tank and Equipment Co. v. T.E. Wiggins, Inc.,* 170 Okl. 504, 42 P.2d 115 (1934). Arguably, liberal enforcement may encompass a sense of fairness. Nonetheless, one must first achieve proper perfection before liberal enforcement may even be considered.

Section 144 was amended in 1963 to include the phrase "or services, including written contracts for the services of a geologist or petroleum engineer." Had the Legislature intended to expand the scope of § 144 to include title opinions rendered by attorneys it could have done so. By not acting in such a manner it apparently recognized that attorneys were better equipped to protect themselves than were laborers and materialmen. As previously mentioned, the issue is one of first impression in Oklahoma. Nothing in our reading of § 144 nor our review of judicial interpretation of the statute, lends support to

Pritchett's contention. "In the absence of a contrary definition of the common words used ... we must assume that the lawmaking authority intended for them to have the same meaning as that attributed to them in ordinary and usual parlance." *Riffe Petroleum Co. v. Great Nat. Corp., Inc., supra,* at 579 (citations omitted).

 Whenever considering and passing on the interpretation to give a particular statute it is wise to consider the words of Sir Francis Bacon, uttered more than 300 years ago: "Judges ought to remember that their office is 'jus dicere' and not 'jus dare'." Henry G. Bohn, *The Moral and Historical Works of Lord Bacon* (1852). With such admonition in mind, we hold today that the rendering of a title opinion does not constitute "services", the performance of which would entitle the performer to the benefit of a lien pursuant to 42 O.S.1981 § 144. Accordingly, for the reasons stated above the objection by Bunker to the claim of Pritchett shall be and hereby is, sustained.

Pursuant to Bankr.R. 7052 this constitutes our findings of fact and conclusions of law.