In re The JULIEN COMPANY, Debtor.

SUNFLOWER COMPRESS; Holmes Bonded Compress; Deer Creek Compress; Tensas Warehouse, Inc.; and Rayville Compress & Warehouse Cooperative, Plaintiffs,

v.

The JULIEN COMPANY, Debtor; Jack F. Marlow, Trustee; Bankers Trust Company; Bank Mees & Hope, N.V.; Bank One, Texas, N.A.; Amsterdam–Rotterdam Bank, N.V.; French American Banking Corporation; Bayerische Vereinsbank A.G. (Union Bank of Bavaria) New York Branch; and Team Bank, (Hereinafter "Institutional Lenders"), Defendants.

SWEDEN GIN COMPANY WAREHOUSE, INC.; and D.B. Griffin Warehouse, Inc., Plaintiffs,

v.

The JULIEN COMPANY, Debtor; Jack F. Marlow, Trustee; and Institutional Lenders, Defendants.

SOUTHERN COMPRESS CO.; Staple Cotton Cooperative Association, d/b/a Staplcotn; and Greenville Compress Company, Plaintiffs,

v.

The JULIEN COMPANY, Debtor; Jack F. Marlow, Trustee; and Institutional Lenders, Defendants.

Bankruptcy No. 90–20283–B (mjn). Adv. Nos. 90–0066, 90–0065 and 90–0074.

United States Bankruptcy Court, W.D. Tennessee, W.D.

Feb. 14, 1992.

William J. Landers, Memphis, Tenn., for BTCo.

John L. Ryder, Apperson, Crump, Duzane & Maxwell, Memphis, Tenn., for Amsterdam–Rotterdam Bank, N.V.

Jack F. Marlow, Chapter 11 Trustee, Memphis, Tenn.

J. David Blaylock, Memphis, Tenn., for Trustee.

Julie C. Chinn, Asst. U.S. Trustee, Memphis, Tenn.

C. Wade Cooper, Jackson & Walker, Dallas, Tex., for Bank One, Texas, N.A.

Charles T. Swayze, Jr., James Y. Dale, Greenwood, Miss., for Sunflower Compress, Holmes Bonded Compress, Deer Creek Compress, Tensas Warehouse, Inc., Rayville Compress & Warehouse Co-op, Sweden Gin Co. Warehouse, D.B. Griffin Warehouse, Inc., Southern Compress Co., Staple Cotton Co-op Ass'n, and Greenville Compress Co.

Douglas W. Wilkerson, Wilkerson & Stafford, Dyersburg, Tenn., for Team Bank.

James F. Gleason, Jr., Hertzog, Calamari, Gleason, New York City, for Bayerische Vereinsbank A.G.

Barry Radick, Risa M. Rosenberg, Milbank, Tweed, Eadley & McCloy, New York City, for Bank Mees & Hope, N.V.

William J. Lowy, Mudge, Rose, Guthrie, Alexander & Ferdon, New York City, for French American Banking Corp.

## MEMORANDUM OPINION AND ORDER ON CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT

WILLIAM H. BROWN, Bankruptcy Judge.

These proceedings [1] are before the court on cross motions for partial summary judgment filed by the above named parties to these adversary proceedings. At issue is whether the plaintiff-warehousemen ("plaintiffs") hold general liens on the proceeds of cotton which was in their possession at the time The Julien Company's ("debtor") bankruptcy petition was filed. The following constitutes findings of fact and conclusions of law pursuant to F.R.B.P. 7052 and 7056.

The record reflects that the debtor's bankruptcy case was commenced with the filing of an involuntary Chapter 7 petition on January 10, 1990. The case was converted to one under Chapter 11 on January 10, 1990, and Jack F. Marlow was subsequently named Trustee of the Chapter 11 estate.

Prior to commencement of the bankruptcy case, the debtor was in the business of buying and selling cotton. The debtor's business was largely financed by the institutional lenders named as defendants in these adversary proceedings. As such, the lenders assert security interests in virtually all the debtor's assets existing at the case's inception. Among the assets existing at inception of the case were bales of cotton stored in the warehouses involved in these

---

1. These proceedings are "core" pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (K).

proceedings. The plaintiffs assert liens on this same cotton, or its proceeds, for charges arising out of the storage and handling of all of the debtor's cotton.

Following his appointment as trustee, Mr. Marlow ("Trustee") was authorized to liquidate the debtor's inventory pursuant to the Court's "Order Authorizing The Trustee To Sell Property Of The Estate Free And Clear Of Liens" entered on February 15, 1990. After liquidation of the inventory, the plaintiffs were paid their "bale specific" charges, which are charges for services performed with regard to the specific cotton in storage at the time the bankruptcy case was commenced. The balance of the proceeds has been paid provisionally to the institutional lenders.

In addition to authorizing liquidation of the debtor's cotton, the February 15, 1990, order reserved rights of the parties and provided for the filing of complaints to enforce such rights. Thus, the plaintiffs initiated the instant adversary proceedings to enforce their asserted "general liens" or liens asserted upon the cotton in storage at commencement of the case for charges for services related to cotton shipped prior to commencement of the case.

In response to the plaintiffs' complaints, the institutional lenders filed a "Joint Motion for Partial Summary Judgment." According to the institutional lenders, the plaintiffs, as a matter of law, have not properly reserved general liens in accordance with applicable law.

The plaintiffs responded to this motion with cross motions for partial summary judgment, asserting that they had in fact properly reserved liens as evidenced by the language of the warehouse receipts representing the cotton at issue. In the alternative, the plaintiffs contend they are entitled to legal or equitable setoff of the amounts due them, are entitled to a general lien under an equitable "color of lien" theory, or are entitled to recoupment as a matter

of law. The institutional lenders dispute the alternative grounds for relief asserted by the plaintiffs, contending each is meritless.

Therefore, the Court is asked to determine whether the following issues may be resolved as a matter of law:

(1) Whether the plaintiffs' warehouse receipts reflect properly reserved general liens in accordance with applicable law;

(2) Whether the plaintiffs are entitled to legal setoff of the amounts due them;

(3) Whether the plaintiffs are entitled to equitable setoff of the amounts due them;

(4) Whether the plaintiffs are entitled to recover under a "color of lien" theory; and

(5) Whether the plaintiffs are entitled to recoupment of the sums due them for all charges related to all of the debtor's cotton.

The parties have filed affidavits, exhibits, and extensive memoranda in support of their respective positions. For purposes of resolution of the issues raised by the motions and cross motions only, the institutional lenders assume the facts alleged by the plaintiffs to be true. Based on the fact that only the issues enumerated above are to be resolved with this memorandum, the Trustee adopts the positions and reasoning therefore asserted by the institutional lenders.

Examination of the pleadings, memoranda, affidavits and exhibits submitted in these proceedings has led the Court to conclude that the issues of whether the warehouse receipts' language properly reserves a general lien and whether the plaintiffs are entitled to setoff are governed by statutes. The remaining issues are governed by applicable case law.

The plaintiff warehousemen[2] whose asserted liens are at issue in this memorandum are licensed by the United States

---

2. The federally licensed plaintiff warehousemen are as follows: Sunflower Compress; Holmes Bonded Compress; Deer Creek Compress; Tensas Warehouse, Inc.; Rayville Compress & Warehouse Cooperative; Sweden Gin Company Warehouse, Inc.; D.B. Griffin Warehouse, Inc.; Southern Compress Co.; Staple Cotton Cooperative Association, d/b/a Staplcotn; and Greenville Compress Company.

Warehouse Act (the "Act"),[3] and the regulations promulgated thereunder.[4]

## SUMMARY JUDGMENT

The general standard for summary judgment in the bankruptcy context is found at F.R.B.P. 7056(c):

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

This standard does not allow the "mere existence of some alleged factual dispute between the parties [to] defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (emphasis in original). The substantive law governing the case will determine what issues of fact are material and the proper inquiry is the same as that used on federal directed verdict motions, "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one sided that one party must prevail as a matter of law." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1480 (6th Cir.1989).

Given these mandates, the Court is compelled to determine whether the evidence presented in these proceedings is "so one sided that one party must prevail as a matter of law." *Id.*

## WAREHOUSE RECEIPTS

### A. *United States Warehouse Act*

The Court is first asked to resolve whether the plaintiffs' warehouse receipts reflect properly reserved general liens in accordance with applicable law. The institutional lenders argue that the United States Warehouse Act[5] and its regulations prohibit federally licensed warehousemen from reserving general liens while the plaintiffs claim that general liens are clearly permitted if sufficient language is used. All parties refer to 7 U.S.C. § 260 which dictates the contents of warehouse receipts. The section states that:

> [e]very receipt issued for agricultural products stored in a warehouse licensed under this Act [7 U.S.C. §§ 241 et seq.] shall embody within its written or printed terms ... (j) a statement of the amount of advances made and of liabilities incurred for which the warehouseman claims a lien: Provided, That if the precise amount of such advances made or of such liabilities incurred be at the time of the issue of the receipt unknown to the warehouseman or his agent who issues it, a statement of the fact that advances have been made or liabilities incurred and the purpose thereof shall be sufficient; ...

The plaintiffs also cite to 7 C.F.R. § 735.-16(b) as authority for asserting a general lien. That regulation states that:

> ... [e]very negotiable receipt issued for cotton stored in a licensed warehouse shall be effective until surrender for delivery of the cotton, ... *Provided,* That nothing contained in this section shall prohibit a warehouseman from legally selling the cotton when his accrued storage and other charges approach the current market value of the cotton.

The Court does not interpret this regulation as providing authority for a general lien. The fact that a warehouseman may legally sell cotton in his possession when charges near its market value merely provides one remedy to satisfy the charges owed on that cotton. This regulation cannot circumvent the specific requirements of 7 U.S.C. § 260(j). Similarly, 7 C.F.R. § 735.29 states that when the owner of the cotton refuses to pay its charges at the end of the season on demand, the warehouseman may take any action allowed under that state's laws to enforce collection of the

---

**3.** 7 U.S.C. §§ 241 *et seq.*

**4.** 7 C.F.R. § 735.

**5.** 7 U.S.C. §§ 241 *et seq.*

charges. This regulation merely allows the warehouseman to apply state law for collection enforcement, but does not authorize assertion of a general lien.

Therefore, the question left to the Court is whether § 260(j) authorizes the plaintiffs to hold general liens on the proceeds of cotton which was in their possession at the time the debtor's bankruptcy petition was filed. However, the Court may not need to resolve this question if the particular warehouse receipts' language is not sufficient. Therefore, the Court will first assume that § 260(j) permits general liens to be asserted and will next determine if the receipts' language is adequate pursuant to that section.

■ Both sides agree that a general lien, such as at issue, is created by statute. *See In re DiPasquale*, 105 B.R. 187, 189 (Bankr.D.R.I.1989); 93 C.J.S. *Warehousemen and Safe Depositories* § 63. The definition of a statutory lien under 11 U.S.C. § 101(53) is a "... lien arising solely by force of a statute on specified circumstances or conditions,...." "Statutory liens, ..., stand in derogation of the common law. '[They] must hence be strictly confined to the ambit of the enactment giving [them] birth.'" *In re Bunker Exploration Co.*, 48 B.R. 708, 710 (Bankr. W.D.Okla.1985) (quoting *Riffe Petroleum Co. v. Great Nat'l. Corp., Inc.*, 614 P.2d 576, 579 (Okla.1980)). Therefore, a strict construction should be applied. Those who claim a statutory lien must bring themselves clearly within the statutory provisions authorizing it. *Jefferson County Coop. Assoc. v. Northeast Kansas Production Credit Assoc. (In re Ragan)*, 73 B.R. 3, 5 (D.Kan.1982). "[A] lien [may not] be created out of a sense of fairness if the terms of the statutory lien are found too narrow and have not been met." *Bunker Exploration Co.*, 48 B.R. at 710 (quoting *Riffe Petroleum Co.*, 614 P.2d at 579).

Thus, the Court must strictly construe the specific terms of 7 U.S.C. § 260(j) in order to determine if the plaintiffs' warehouse receipt language is sufficient. According to that section, the receipt *must* embody within its terms a statement of the amount of advances made or of liabilities incurred for which a lien is claimed. If the precise amount is not known, then a statement *of the fact* that advances and/or liabilities exist must be put on the receipt. 7 U.S.C. § 260(j).

In this case, every plaintiff's receipt has the following general language and terms printed on its face:

STORAGE AND OTHER RATES AS STATED HEREIN MAY BE CHANGED AS PROVIDED IN SAID REGULATIONS. DEMAND FOR PAYMENT OF ALL ACCRUED CHARGES MAY BE MADE AT THE CLOSE OF EACH COTTON SEASON UPON SURRENDER OF THIS RECEIPT AND THE PAYMENT OF ALL LIENS DUE THE WAREHOUSEMAN, SAID COTTON WILL BE DELIVERED TO THE BEARER.

THE WAREHOUSEMAN CLAIMS A LIEN FOR SERVICES AS FOLLOWS: [This portion is left blank. Each warehouseman has typed in prices per month for specific handling, storage, and similar charges.] AND ANY OTHER CHARGES FOR SERVICES REQUESTED ACCORDING TO THE TARIFF IN EFFECT ON THE DATE SUCH SERVICES ARE PERFORMED. FULL AMOUNT OF CHARGES FURNISHED ON REQUEST.

■ The Court finds this language insufficient to properly assert a general lien under § 260(j). Nowhere in the receipts' language is a statement of the amount of or fact of the advances and liabilities for a lien made. The receipts simply state that a demand for payment of all accrued charges *may* be made, not that it *has* been made. Furthermore, where the plaintiffs specifically do claim a lien in the receipts, they simply list monthly rates for handling and storage which are applicable to those receipts' bales of cotton. In addition, the receipts also state a lien for any other charges for services requested according to the tariff in effect on the date such services *are* performed. This declaration provides no notice that a lien is being claimed for past services or that past services were even performed. A simple change in lan-

guage from "... such services *are* performed" to "... such services *were* and are performed" would have helped to notify third parties who received the receipts. However, as the receipts stand, no language is embodied in them which meets the level required by § 260(j).

All of the warehouse receipts also refer to the tariff for any other charges requested according to that document. The plaintiffs argue that referring to the tariff in the receipt gives rise to a general lien if the tariff so provides. They claim that § 260(j) does not require that the lien be specifically set forth on the warehouse receipt itself. However, the Court disagrees with this interpretation of § 260(j). The statute specifically states that every receipt *"shall embody* within its written or printed terms" a statement of the advances, liabilities and liens. 7 U.S.C. § 260(j). A strict interpretation requires that the receipt must contain the language itself. Referral to a separate tariff is insufficient to satisfy § 260(j).

The language of the statute (7 U.S.C. § 260(j)) needs to be tracked in the receipts. Third parties must be provided notice by clear and unequivocal lien language noting that past charges have accrued and that a general lien is being claimed. Otherwise, one of the purposes of the Act, to establish "warehouse receipts as a secure and readily negotiable form of property," would be hindered. *Farmers Elevator Mut. Ins. Co. v. Jewett,* 394 F.2d 896, 899 (10th Cir.1968).

> The policy of the law is *against secret liens,* and the court knows of no noncontract lien on personal property, good as against purchasers or mortgagees, not dependent either on possession or on some form of statutory notice.

*In re DiPasquale,* 105 B.R. at 190 (emphasis added) (quoting *Northeast Kansas Production Credit Assoc. v. Ferbrache,* 236 Kan. 491, 494, 693 P.2d 1152 (1985)).

The plaintiffs argue that the lengths of the tariffs make it impossible to print all of their terms on the receipts. However, § 260 does not require every term in a tariff to be printed on the receipt. According to 7 C.F.R. § 735.29, which guards against unreasonable or exorbitant rates, before a license for a warehouse is granted, the warehouseman "... shall file with the Department [U.S.D.A.] a copy of his rules, if any, and a schedule of the charges to be made by him if licensed." These rules and schedules make up the tariff. Since the rules and rates have been pre-approved, a general reference in the receipt to the tariff for charges, as is already done, is sufficient for purposes other than general lien notice. If Congress had intended that the rules and rates be set out in the receipt, it would have enacted a special provision so providing. However, Congress did enact § 260(j) which specifically deals with advances, liabilities and liens. Therefore, the tariff term that must be set out in the warehouse receipt is any tariff provision declaring a general lien and that advances and/or liabilities have been made.

In addition, the plaintiffs claim that by referring to the tariff, the receipt incorporates it as part of the contract. While this reference to the tariff might be sufficient as between the plaintiff and the debtor who made the contract, it is not adequate as to the third party institutional lenders. Even though the plaintiffs claim that the debtor received copies of the tariffs and was aware of their terms, the Court can not assume that the institutional lenders had access to the tariffs and knowledge of any general liens claimed by the plaintiffs. As previously stated, the law is against secret liens and third parties must be provided with adequate notice of these liens. *See In re DiPasquale,* 105 B.R. at 190.

Finally, the plaintiffs argue that § 7–103 of the Uniform Commercial Code applies to the federal warehousemen's receipts and therefore makes reference to the tariffs sufficient for general lien purposes. That section states that to the extent any treaty or statute of the United States, tariff or regulation is applicable, provisions of the Uniform Commercial Code are subject thereto. Thus, according to § 7–103, applicable federal law supersedes the Uniform Commercial Code where the federal provisions are inconsistent. *See* U.C.C. § 7–103 comment 1; 15A AM.JUR.2d *Commercial*

**790**

Code § 43 (1976). If this section allows general liens through reference to the tariff as the plaintiffs argue, then 7 U.S.C. § 260(j) is inconsistent and so preempts it. Assuming general liens are authorized, § 260(j) requires that the fact of advances, liabilities and liens be clearly stated in the receipts so that reference to the tariff is not adequate. Therefore, § 260(j) cannot be circumvented by relying on § 7–103 of the Uniform Commercial Code.

Consequently, the Court finds and concludes that the language in the plaintiffs' warehouse receipts does not satisfy the requirements of 7 U.S.C. § 260 and that the reference to the tariffs in the receipts is not adequate. There is no genuine issue of any material fact relative to the warehouse receipts' language. The plaintiffs have thus not properly asserted a statutory general lien, assuming one is authorized. Therefore, the Court should not decide the issue of whether the United States Warehouse Act (7 U.S.C. § 260(j)) permits a warehouseman to reserve a general lien. While the Court appreciates that a decision might be useful in future disputes over warehouse receipts, the Court should not indulge in the giving of advisory opinions. *Golden v. Zwickler*, 394 U.S. 103, 108, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969). "The jurisdiction of federal courts is limited by Article III of the United States Constitution to consideration of actual cases and controversies, therefore federal courts are not permitted to render advisory opinions." *Adcock v. Firestone Tire & Rubber Co.*, 822 F.2d 623, 627 (6th Cir.1987). A defendant's desire, no matter how compelling, to know in advance of an actual controversy how a court may rule is not the equivalent of a concrete controversy between adverse parties. *Railway Mail Ass'n. v. Corsi*, 326 U.S. 88, 93, 65 S.Ct. 1483, 89 L.Ed. 2072 (1945). The resolution of the possibility of a general lien is not necessary to the determination of these cross motions for summary judgment. Therefore, this Court declines to resolve whether § 260(j) of the Act permits general liens since the warehouse receipts' language does not properly assert the liens even if they are authorized.

**B. *Conclusion***

The Court concludes that it must grant the motion for partial summary judgment filed by the institutional lenders and Trustee on the issue of whether the plaintiffs' warehouse receipts reflect properly reserved general liens in accordance with applicable law. Assuming that these liens are allowable under 7 U.S.C. § 260(j), the plaintiffs' receipts do not satisfy that section's requirement that the amount of or fact of the advances, liabilities, and liens be embodied within the receipts. Therefore, the Court declines to resolve whether 7 U.S.C. § 260(j) authorizes general liens, but grants partial summary judgment to the institutional lenders and Trustee because the warehouse receipts' language is inadequate.

**SETOFF**

As noted above, setoff in the bankruptcy context is governed by statute. In pertinent part, that statute provides:

(a) Except as otherwise provided in this section and in sections 362 and 363 of this title, [Title 11 of the United States Code], this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, ...

11 U.S.C. § 553(a).

■ From this language, it is clear that setoff by a creditor requires the existence of mutual prepetition debts between the debtor and the creditor exercising setoff. It is further clear that, under such circumstances, with exceptions not applicable here, the right to setoff is preserved. In effect, where there are mutual prepetition debts, the creditor is entitled to retain any amounts the creditor may owe the debtor to the extent of the debtor's obligation to that creditor.

If the debts are mutual for purposes of setoff, "they must subsist or be owing between the same parties, in the same

right or capacity, and must be of the same kind or quality." *In re Braniff Airways, Inc.,* 42 B.R. 443, 449 (Bankr.N.D.Tex. 1984). Consequently,

> ... as a general rule, neither a creditor nor a debtor may offset prepetition debts and claims against postpetition debts and claims because of the absence of mutuality of the parties. A *debtor's* prepetition claim against a creditor does not involve the same parties as the *debtor-in-possession's* [or trustee's] claim against the same creditor.

*Id.* (emphasis in original).

It is uncontroverted, for purposes of these summary judgment motions, that the debtor was indebted prepetition to these plaintiffs. It is equally uncontroverted, for purposes of these motions, that the value of the proceeds remaining from the sale of the debtor's cotton exceeds the amount of the plaintiffs' claims in each proceeding. The issue is whether the plaintiffs were indebted to the debtor prepetition and, if not, whether the Court may allow setoff as a matter of equity to prevent irremedial injustice to the plaintiffs.

The plaintiffs contend that by virtue of their storage of the debtor's cotton which was, under state law, subject to sale for satisfaction of their storage and handling charges after which the plaintiffs would have been obligated to remit any excess proceeds to the debtor, they were indebted to the debtor. *See* U.C.C. § 7–210. In addition, the plaintiffs assert that but for the February 15, 1990, order allowing the Trustee to liquidate the cotton, they would have filed motions to lift the stay in order to liquidate the cotton themselves. They would have then been obligated to remit the proceeds to the estate, i.e., they would have been indebted to the post-bankruptcy debtor, and entitled to offset their claims. Finally, the plaintiffs assert that the cotton at issue here was deposited prepetition under such circumstances that the deposit would result in a debt, as if for sale or collection. The plaintiffs primarily rely upon *Half Moon Fruit & Produce Company v. Floyd,* 60 F.2d 799 (9th Cir.1932) and *Gibson v. Central National Bank of*

*McKinney,* 171 F.2d 398 (5th Cir.1948) in support of their positions.

The *Half Moon Fruit & Produce Company* case involved the bankruptcy trustee's objection to the allowance of a claim filed by Half Moon Fruit & Produce Company ("company") against the estate until the company relinquished funds it received from the sale of seventy-five cars of melons belonging to the debtor and consigned to the company for sale. The trustee alleged that the receipt of the funds by the company was a preference. Pertinent to this proceeding, that Court concluded that the company could retain the funds realized from the sale of the melons because, upon the consignment of the melons by the debtor to the company, the company "owed the [debtor] the duty of converting the melons into money for the account of the [debtor]." Thus, that obligation of the company, as consignee, was held to be a credit in the debtor's favor to be offset against the credit of the company, as consignee, for moneys previously advanced. 60 F.2d at 802.

The *Gibson v. Central National Bank of McKinney* case involved an attempt by a bankruptcy trustee to recover funds retained by the bank after it sold collateral pledged before the bankruptcy. As set forth by the Court of Appeals for the Fifth Circuit, the facts demonstrated that in December, 1944, the debtor owed the bank $10,738.26 secured by a deposit of $2,016.41 and warehouse receipts covering ten thousand bushels of corn. On December 24, 1944, the bank mistakenly honored a check drawn on the debtor's account in the amount of $1,992.63. In January of 1945, a state court appointed a receiver, who allowed the bank to sell the ten thousand bushels of corn. The net proceeds of the sale totalled $11,766.66 which, when coupled with the debtor's deposit, resulted in credits for the debtor of $13,783.07. Including the amount of the erroneously paid insufficient funds check, the debtor owed the bank $14,747.30. The trustee contended that the bank should not have been allowed to offset the amount paid on the insufficient check or the expenses of the sale. The Court found no merit in the

trustee's argument that the bank's retention of these amounts constituted a preference and allowed the bank to offset the entire amount in reliance on the former Bankruptcy Act's section allowing setoffs of "mutual debts or credits." Bankruptcy Act of 1898, § 68 (11 U.S.C. § 108), reprinted in Collier On Bankruptcy, 1 Appx. 92 (15th ed).

According to the plaintiffs' arguments in this proceeding, the *Half Moon Fruit & Produce Company* holding is significant in that the debtor's deposit of the melons resulted in a "credit in the debtor's favor" or a debt from the company to the debtor. However, the circumstances of the deposit in that case, i.e., that upon receipt of the melons, the company was obligated to convert the melons into money for the debtor's account, are distinguishable from the circumstances here. There is no evidence before this Court that the plaintiffs here owed the debtor a duty to convert the cotton into money. Rather, the evidence reflects that the plaintiffs were to store and preserve the cotton as deposited until requested to ship it to an ultimate buyer by the debtor's representatives. Consequently, the Court concludes that the *Half Moon Fruit & Produce Company* case is not authority for resolution of the issue at bar.

With respect to the *Gibson* case, the plaintiffs contend that it is significant in that the Bank was allowed to offset "indebtedness against the collateral *in addition* to the debt for which the collateral was pledged as security" *after* the sale of the collateral. 171 F.2d at 400 (emphasis added). Thus, the argument goes, this case supports the plaintiffs' assertion that they are entitled to setoff, against the sales proceeds of the cotton, amounts in excess of the bale specific charges due them.

Unfortunately, the *Gibson* opinion to which this Court is referred, located at 171 F.2d 398, offers no information concerning when any of the events described occurred in relation to the bankruptcy filing. No petition date is provided.[6] However, the

*Gibson* Court allowed the setoff on the authority of the former Bankruptcy Act's provision allowing setoff. That section provided in pertinent part:

§ 68. *Setoffs and Counterclaims.*

a. In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be setoff against the other, and the balance only shall be allowed or paid.

b. A set-off or counterclaim shall not be allowed in favor of any debtor of the bankrupt which (1) is not provable against the estate and allowable ...; or (2) was purchased by or transferred to him after the filing of the petition or within four months before such filing, with a view to such use and with knowledge or notice that such bankrupt was insolvent or had committed an act of bankruptcy.

Bankruptcy Act of 1898, § 68 (11 U.S.C. § 108), reprinted in Collier on Bankruptcy, 1 Appx. 92 (15th ed.).

Although lacking a specified prepetition requirement as found in current 11 U.S.C. § 553, this former section did require a finding of mutuality. According to pertinent case law, this mutuality requirement included a requirement that the obligations accrue prepetition. *See, e.g., Prudential Insurance Co. of America v. Nelson,* 101 F.2d 441 (6th Cir.1939); *McDaniel National Bank v. Bridwell,* 74 F.2d 331 (8th Cir. 1934). Therefore, assuming the Court of Appeals for the Fifth Circuit adhered to this interpretation of the mutuality requirement, it may be concluded that the obligations of the parties in the *Gibson* case accrued prepetition. If not, the case is clearly not applicable here as the controlling statute in these proceedings requires mutuality of obligations *prepetition.* Either way, the case does little to bolster the plaintiffs' argument that they are entitled to setoff their claims against the cotton proceeds unless a prepetition indebtedness to the debtor can be shown.

---

6. The institutional lenders state that they examined the appellate record in *Gibson* finding that the bank realized on its security interest prepeti-tion. Institutional Lenders' Joint Response ..., p. 40, n. 28 (8/19/91).

Rather than a consignee as the claimant in the *Half Moon Fruit & Produce Company* case or a secured creditor as the bank in the *Gibson* case, the plaintiffs here are warehousemen. By definition under state law, which is not preempted by any conflicting federal law, a "warehouseman is a person engaged in the business of storing goods for hire." UCC § 7–102(h). Moreover, when "by a warehouse receipt, bill of lading, or other document of title" a warehouseman "acknowledges possession of goods and contracts to deliver them," that warehouseman meets the definition of a bailee. UCC § 7–102(a).

It is well settled that a bailee of property is distinguishable from a debtor. The rationale is that the property, which is the subject of the bailment, is owned by the bailor. *Matter of Bevill, Bresler & Schulman Asset Mgmt.*, 896 F.2d 54, 57 (3rd Cir.1990). Thus, the elements of a bailment are described as:

> ... delivery of personal property by one person to another in trust for a specific purpose and acceptance of such delivery, and an express or implied contract that the trust will be carried out and *the property* returned to the bailor or dealt with as he directs.

*Braniff Airways, Inc. v. Exxon Co., U.S.A.*, 814 F.2d 1030, 1038 (5th Cir.1987) (emphasis added).

█ In the instant proceedings, the plaintiffs do not dispute that they acknowledged possession of the cotton by issuance of warehouse receipts. Nor do they dispute that they contracted with the debtor to at least ship, if not deliver, the cotton upon request of the debtor. It may thus be concluded that the plaintiffs here qualify as prepetition bailees, rather than debtors. Regardless of what the plaintiffs would or could have done but for the bankruptcy petition, the fact remains that they owed no mutual prepetition debt to the debtor. As such, it may further be concluded that the plaintiffs are not entitled to setoff their claims pursuant to § 553.

█ This legal conclusion, of course, leaves the issue of whether the plaintiffs may be allowed to setoff their claims under principles of equity. The remedy of setoff is one rooted in equity, thus, it has been held that the "allowance of setoff lies within the sound discretion of the trial court." *In re Braniff Airways, Inc.*, 42 B.R. at 448 (citations omitted). However, the court's discretion is not without limits. Generally, a court should deny setoff where the requirements of mutuality of parties and claims is missing. *Id.* A court of equity could permit setoff even though mutuality is lacking. It should decline to do so, however, "absent a showing of irremedial injustice." *Id.* This is because equity follows the law and "will not ordinarily allow a setoff of debts accruing in different rights or dissimilar capacities." *Id.* at 449.

According to the plaintiffs, "[t]here is no question that 'irremedial injustice' would occur in these adversary proceedings if the warehousemen were not allowed their rightful setoff and that the lenders would be unjustly enriched as a result of their own actions." Response of Certain Warehousemen ..., p. 43. Further, according to the plaintiffs, the equities in these proceedings favor them as opposed to the institutional lenders because the lenders had control and knowledge of the debtor's finances. In support of this allegation, the plaintiffs direct the Court's attention to the relationship between the institutional lenders and L & S Cotton Systems, Inc. ("L & S") and its role in prepetition transactions between the plaintiffs and the debtor. This relationship and role may be briefly described as follows: In its capacity as financier of the debtor's operations, one of the lenders here, Bankers Trust Company ("BTCo") entered into a "Cotton Collateral Sub–Depository Agreement" with L & S on April 4, 1988. Pursuant to this agreement, to which the debtor consented, L & S was named as BTCo's agent to serve as the sub-depository and custodian of cotton documents deposited by the debtor for the account of BTCo. Response of Certain Warehousemen ..., Ex. A to Ex. T, Affidavit of William Wirt Ludwick; *see, In re The Julien Company*, 127 B.R. 604, 612 (Bankr.W.D.Tenn.1991).

In its position as sub-depository and custodian, L & S held the debtor's warehouse receipts and cotton equities which served as collateral for BTCo. *Id.* One of its responsibilities was to instruct warehouses in the shipment of cotton owned by the debtor and pledged to BTCo. Response of Certain Warehousemen ..., Ex. T, Affidavit of William Wirt Ludwick, ¶ 2. Upon request of the debtor for shipment of cotton, L & S would mail the negotiable warehouse receipts representing the cotton and an "instructional, transmittal" letter to the designated warehouse setting forth the specifics of the shipment requested. *Id.*

L & S was controlled by BTCo rather than by the debtor. *In re The Julien Company,* 127 B.R. at 612. On December 7, 1989, L & S received a fax from BTCo "instructing L & S to recover all warehouse receipts out in trust and not to release any until further notice." Affidavit of William Wirt Ludwick, ¶ 4.

According to the plaintiffs, upon receipt of a "transmittal letter" from L & S, they would prepare and ship the cotton designated. Response of Certain Warehousemen ..., Ex.'s A through Q, Affidavits of Warehousemen. They would then submit invoices for the payment of their charges to the debtor. Response of Certain Warehousemen ..., Ex. S, Affidavit of Donna Elzie, ¶ 2. The debtor would then remit payment for the charges from a special account established for that purpose, i.e., the DXP account, with BTCo. BTCo funded this account on a daily basis. *Id.* BTCo was apprised regularly of the status of the account and its collateral documents. *Id; see also,* Affidavit of William Wirt Ludwick, Ex. T.

Given this arrangement, the plaintiffs assert that BTCo was aware of the debtor's financial situation at all pertinent times and was, most importantly, aware of their outstanding, accrued charges at the time BTCo and other creditors placed the debtor in involuntary bankruptcy. Accordingly, inasmuch as the charges were incurred for preservation of BTCo's claimed collateral, BTCo and the other institutional lenders will be unjustly enriched at the expense of these plaintiffs if these plaintiffs are not allowed to equitably setoff their claims against the cotton proceeds. The institutional lenders contend that to allow an equitable setoff under the circumstances here would effectively circumvent the requirements for setoff in the bankruptcy context as contained in § 553. According to the institutional lenders, the plaintiffs' expectation of payment and subsequent nonpayment simply renders them unsecured creditors, but does not entitle them to setoff in contravention of the statute.

While there may be some merit to the plaintiffs' argument that the equities of this case are in their favor given the above discussion, it must be remembered that the remedy of setoff in this context is statutorily defined. As discussed above, although "irremedial injustice" may allow exceptions to the statutory requirements, the Court has not found nor been provided any examples of "irremedial injustice" justifying such exceptions. To the contrary, the cases examined reflect a reluctance by the courts considering the issue to find "irremedial injustice" when the disallowance of equitable setoff results in a creditor holding an unsecured claim. *See, e.g., In re NWFX, Inc.,* 864 F.2d 593 (8th Cir.1989); *Boston & Maine Corp. v. Chicago Pacific Corp.,* 785 F.2d 562 (7th Cir.1986); *In re B & L Oil Co.,* 782 F.2d 155 (10th Cir.1986).

Moreover, the equity powers of this Court are generally limited by the parameters of the Bankruptcy Code as reflected by the Supreme Court's admonition

> that whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code.

*Norwest Bank of Worthington v. Ahlers,* 485 U.S. 197, 108 S.Ct. 963, 968–69, 99 L.Ed.2d 169 (1988). Given these precedents and the existence of statutorily defined parameters for exercising setoff, the Court concludes that, as a matter of law, it cannot extend those parameters to allow equitable setoff in these proceedings. Consequently, the institutional lenders and Trustee are entitled to summary judgment on the issues of whether the plaintiffs are

entitled to legal or equitable setoff of their claims.

## RECOUPMENT

In addition to setoff, the plaintiffs urge that they are entitled to recover their charges by recoupment. Like setoff, the doctrine of recoupment is important in the bankruptcy context for, where applicable, it may be used to afford a creditor preferential treatment. *In re NWFX, Inc.*, 864 F.2d at 597.

> Both setoffs and recoupment are counterclaims, but they differ in that the setoff is a claim that arises out of a transaction different from the one sued on. It is asserted to diminish a plaintiff's demand. *Frederick v. U.S.*, 386 F.2d 481 (5th Cir. 1967) ... Recoupment, which is a defense as well as a counterclaim, on the other hand, is a counter demand arising from the same transaction as the plaintiff's claim. *Lee v. Schweiker*, 739 F.2d 870, 875 (3rd Cir.1984).

*In re Buttes Resources Co.*, 89 B.R. 613, 615 (S.D.Tex.1988); *see also In re Holford*, 896 F.2d 176, 178 (5th Cir.1990); *In re B & L Oil Co.*, 782 F.2d 155, 157 (10th Cir.1986). In addition, recoupment is most commonly, though not always, allowed where the parties were operating under a contract which specifically allowed recoupment. *In re NWFX, Inc.*, 864 F.2d at 597; *cf. In re Holford*, 896 F.2d 176 (5th Cir.1990).

As discussed above, the Court has found that no prepetition mutual obligations existed between the plaintiffs and the debtor. Assuming arguendo, however, that the plaintiffs did owe an obligation, i.e., the potential proceeds from the cotton in storage, to the debtor, there is no evidence that such an obligation would have arisen out of the same transaction as the debtor's obligation to the plaintiffs, i.e., payment for services in connection with the previously shipped cotton. The debtor's obligation to pay for services performed with regard to previously shipped cotton would seemingly have arisen out of the transactions involving that cotton rather than out of the transactions involving the cotton in storage at commencement of the case. Having no evidence of mutual claims arising out of

the same transaction, the Court concludes that the plaintiffs' motion for summary judgment under the recoupment doctrine must be denied, and the institutional lenders and Trustee are entitled to summary judgment on this issue.

## EQUITABLE COLOR OF LIEN

Finally, the plaintiffs contend that they are entitled to recover their charges for services performed with respect to all of the debtor's cotton from the proceeds on hand on the basis that the cotton they held at the commencement of the case was subject to an equitable color of lien. From a review of the plaintiffs' memorandums and caselaw cited therein, it is the Court's understanding that an equitable color of lien is essentially a lien, enforceable in equity, which arises by virtue of the parties' express or implied agreement and custom and course of dealing with one another. It is a remedy imposed to avoid enrichment. *See, e.g., Citizens Co-Op Gin v. United States*, 427 F.2d 692 (5th Cir.1970); *In re McConnell*, 122 B.R. 41, 45 (Bankr. S.D.Tex.1989). Consistent with the Court's understanding is the plaintiff's argument here that they essentially had agreements with the debtor and L & S, as illustrated by their custom and course of dealing, that they would ship cotton at the direction of L & S, submit invoices for accrued charges to the debtor and receive payment from the debtor's DXP account, which was monitored and funded by BTCo. All parties were aware that if not paid, the warehousemen would refuse to ship further cotton. *See* above discussion under "Setoff." In support of this argument the plaintiffs have submitted, *inter alia*, affidavits of the warehousemen involved in these proceedings; of Donna Elzie, a former employee of the debtor; of William Wirt Ludwick, former president of L & S; of D.E. Orendorf, a former employee of and consultant to the debtor; and of Julien J. Hohenberg, former president of the debtor.

The institutional lenders have responded to these arguments and affidavits, contending that the allowance of such equitable liens would effectively annihilate the above

discussed statutes and precedent applicable to these proceedings, which govern the establishment of general liens.

■ The Court recognizes that the arguments posed by the plaintiffs in support of an equitable lien remedy are dangerously similar to, if not exactly like, the arguments presented in support of interpreting the warehouse receipts so as to reflect general liens and of finding an equitable right of setoff. Accordingly, at first glance, these arguments seem untenable and yet another attempt to circumvent the UCC and Bankruptcy Code by giving effect to "secret liens." However, upon closer examination, it appears that this equitable lien argument may, in this case, have merit at least as to BTCo because there is some evidence indicating that the liens may not have been a secret unknown to BTCo or its agent L & S.

It is undisputed that the plaintiffs and the debtor, via its former president, had an agreement whereby the plaintiffs would ship cotton when requested to do so by L & S and would later submit invoices for payment of their service charges. It was further understood between the parties that the plaintiffs would refuse to ship additional cotton if not paid for their prior services. Response of Certain Warehousemen ..., Exs. A–Q, Affidavit of Warehousemen; Ex. S; Affidavit of Donna Elzie; Supplemental Memorandum In Support of Warehousemen's Motion; Ex. 1, Affidavit of Julien J. Hohenberg. In stating its prior conclusions under the plaintiffs' other theories of recovery, the Court intends to make it clear that the asserted liens are unenforceable under the applicable law as to innocent third parties, such as the Trustee. However, the relationship between L & S, BTCo and the debtor, and the asserted relationship between L & S and the plaintiffs suggest that BTCo may not qualify under these unique circumstances as an innocent third party.

Indeed, the affidavits submitted by the plaintiffs and referenced above indicate that BTCo, through its agent L & S, was intrinsically involved in the debtor's transactions with these plaintiffs. See above discussion under "Setoff." Moreover, the record reflects that the proceeds derived from the sale of the debtor's cotton have been provisionally paid to BTCo. As such, unlike the usual bankruptcy case where general liens are disfavored as preferential and assets are collected and preserved for the benefit of the estate and all its creditors, the evidence here suggests that the assets have been collected and preserved for the asserted claims of BTCo.

Therefore, the issue becomes whether L & S and/or BTCo[7] knew of and participated in the agreement between the debtor and the plaintiffs that the warehousemen would reserve a lien on cotton for the payment of prior invoices by retention of the cotton. The evidence submitted by the plaintiffs strongly suggests that BTCo was aware of the arrangement whereby the plaintiffs would submit invoices subsequent to shipping cotton at the direction of L & S. However, the evidence is not so skewed with regard to whether BTCo had knowledge of the lien agreement. Although Donna Elzie states in her affidavit that Mr. Andrew Halle, a representative of BTCo, had knowledge of this arrangement, no mention of such knowledge is made in the affidavit of Mr. Ludwick, the president of L & S nor in any other affiant involved in these transactions. Moreover, discovery was stayed in this matter following the filing of the institutional lenders' motion for partial summary judgment, thus precluding the lenders from investigating the facts pertinent to this issue of an equitable lien, and they have specifically reserved their right to do so. See Post Hearing Memorandum ... of Institutional Lenders. Consequently, in all fairness, the Court can not conclude that the plaintiffs are entitled to summary judgment on this issue at this stage of the proceedings.

It should be noted that should the Court ultimately rule in the plaintiffs' favor, with a finding that they are entitled to assert equitable liens enforceable against the institutional lenders, such liens would not be

---

7. It is well settled that the knowledge of an agent may be imputed to its principal. See, e.g., *Seven Elves, Inc. v. Eskenazi*, 704 F.2d 241, 245–46 (5th Cir.1983).

enforceable against the Trustee who, of course, possesses a distinct third party status and avoidance powers.

From the above discussion the Court concludes that there remain outstanding issues of material fact pertinent to this issue and the parties' cross motions for summary judgment must be denied on the issue of equitable color of lien. Accordingly, any disputed issues regarding the amounts of the warehousemen's claims likewise remain unresolved.

IT IS THEREFORE ORDERED that the motions for partial summary judgment filed by the institutional lenders and adopted by the Trustee in each adversary proceeding are granted on the following issues:

(1) The plaintiffs' warehouse receipts do not reflect properly reserved general liens in accordance with applicable law;

(2) The plaintiffs are not entitled to legal setoff of the amounts due them;

(3) The plaintiffs are not entitled to equitable setoff of the amounts due them; and

(4) The plaintiffs are not entitled to recoupment of the sums due them for all charges related to the debtor's cotton.

IT IS FURTHER ORDERED that the cross motions for partial summary judgment filed by the plaintiffs, the institutional lenders, and the Trustee in each adversary proceeding are denied on the following issue:

(1) Whether the plaintiffs are entitled to recover from the institutional lenders under an equitable "color of lien" theory.

A further pre-trial and scheduling conference will be held on Thursday, March 26, 1991, at 9:30 a.m. in Courtroom 680, 200 Jefferson Avenue, Memphis, Tennessee to discuss discovery and trial of the plaintiffs' "color of lien" theory. The Court will also consider at that conference whether the "color of lien" theory is a core proceeding.

SO ORDERED.